## THE STATE OF MINNESOTA *vs.* CHARLES DUMPHEY, impleaded with SANDFORD TRIPP.

The indictment charged a Defendant with the crime of murder, in the form prescribed by the statute, without charging the particular degree. *Held* to be sufficient.

Upon the trial of a criminal cause, the State challenged a juror for actual bias, but at once withdrew the challenge. Some time after, but before the jury was sworn, the State renewed the challenge for actual bias, and the prisoner's counsel objected, but the Court permitted the challenge to be interposed; the triers found the challenge true and the juror was excluded. There was no error in allowing the renewal of the challenge.

Affidavits showing bias and prejudice of certain of the jurors in a criminal cause, were read in support of a motion for a new trial. The facts stated in the affidavits were clearly denied by the jurors referred to, leaving the proof upon the question of bias and prejudice *in equilibrio*. The verdict of a jury will not be disturbed or set aside upon affidavits of this nature, unless there is a clear preponderance of evidence in favor of the bias charged.

Where the killing is under such circumstances as to create a doubt as to the character of the offence committed, the general character of the deceased may be shown, because then it becomes a material, and perhaps necessary, fact, to enable the jury to ascertain the truth, and as such is involved in the *res gestae*; but if the killing is proven to have been with a felonious intent, the character of the deceased can in no manner affect the result.

Proof of the good character of the accused may always come in, and its weight will be matter of consideration for the jury under the instructions of the Court, which will always vary, as the other proof is clear or doubtful, positive or circumstantial, in each particular case.

An offer to prove, on behalf of the accused, (who was indicted jointly with one Tripp, for murder) that the deceased threatened to kill the Defendant Tripp, about ten days before the homicide, should have been accompanied by the offer to show that the threat had been made to Tripp, or had been communicated to him. And whether such an offer would be material upon the separate trial of the Defendant, against whom no such threat was made—*Doubted.*

The evidence of co-Defendants in a criminal prosecution is inadmissible, and they will not be permitted to testify for each other. If the Defendants are tried separately, the rule is the same—*Baker vs. United States,* 1 *Minn.* 207—*affirmed.*

Cumulative or impeaching testimony is never sufficient to warrant a new trial, even if not known until after the first trial has ended.

The Defendant, Charles Dumphy, at a prior term of the District Court of Anoka County, was indicted jointly with Sandford Tripp for the murder of Michael Dugan. Defendants were arraigned and plead not guilty, and the case was continued to the next term of the Court in August 1860. The

case being then moved, Defendant moved to quash the indictment on the ground of uncertainty, it not specifying of what degree of murder the Defendants were charged. The Court denied the motion and Defendants excepted. The Defendant Dumphy then demanded a separate trial, which was granted, and the Court proceeded to empanel a jury. A Mr. Rye was called and challenged by the prosecution for actual bias, and the challenge then withdrawn by the prosecution. The prosecution afterwards, and before the jury was sworn, again challenged Mr. Rye for actual bias, to which proceedings the Defendant objected on the ground that he had been already challenged and the challenge determined. The Court overruled the objection and Defendant excepted.

The case shows that sometime in January, 1859, deceased and a woman calling herself his wife, lived at a place called Pleasure Creek, in Anoka county, and kept a kind of tavern or drinking house. That on the 11th of January, 1859, Defendants in passing, stopped there—the deceased and Defendants being acquaintances. That there were no neighbors nearer than about a mile. That soon after Defendants went in, there was more or less drinking. That when they went in, all parties were on good terms. That Defendants went in about two o'clock, and that deceased was killed at about half past five by a blow on the head penetrating the brain.

Defendant offered evidence at several stages of the case to show that deceased was a man of violent and quarrelsome disposition, and that some ten days before the affair, the deceased had threatened to kill the Defendant Tripp, which evidence was objected to by the prosecution, and the objection sustained by the Court and Defendant excepted. The Defendant further called and swore Sandford Tripp, the person jointly indicted with Defendant, and offered his testimony. It was objected to by the prosecution on the ground that the witness was a joint Defendant in the indictment, and had neither been acquitted nor convicted. The Court sustained the objection, and the Defendant duly excepted.

The motion is also made on the affidavits of three different persons as to the misconduct of three different jurymen, that they had expressed a pre-determination to hang the Defendant,

and the affidavit of the Defendant that he knew nothing of it till after the verdict, and also on the affidavit of one Mr. Lufkin, and of the counsel in the case showing newly discovered evidence. The affidavits of the jurors who were charged with misconduct, were read upon the motion, in which they deny the facts charged in the affidavits.

Points and authorities for Prosecution:

*First.*—The indictment is entirely sufficient. The statute has not changed the common law with reference to the crime of murder. An indictment good at common law is good under the statute; and upon an indictment charging murder generally the jury may find the Defendant guilty of any degree of murder or manslaughter. *Ch.* 118, *Sec.* 254, *Comp. Statutes; Wharton's Cr. Law, Sec.* 1115; *Com. vs. Flanagan,* 7 *Watts & Sergeant,* 418; *Com. vs. White,* 6 *Binney,* 183.

*Second.*—(A.) The affidavits of Smiley & Greenwood are insufficient to warrant this Court in granting a new trial, as they do not show that the alleged statements of jurors were made prior to the trial and rendition of the verdict. The affidavit of Shephard merely shows a careless remark made during the progress of the trial, and although perhaps evincing gross misconduct in the juror, furnishes no ground for a new trial. *Wharton's Cr. Law, Sec.* 3152, *note X.*

(*B.*) The affidavits of jurors are admissible in exculpation of themselves and in support of the verdict. *Whar. Cr. Law,* 3152; 3 *Foster,* (*N. H.*) 321.

(*C.*) The affidavits of the jurors whose conduct is sought to be impeached, leave the case *in equilibrio*—and the burden of proof being upon the Defendant, he has failed to support his application by the necessary evidence. 3 *Foster,* (*N. H.*) 321.

(*D.*) A mere expression of an opinion, although good ground for a challenge, is not ground for a new trial; for this, strong and convincing evidence that the juror has absolutely prejudged the case is required. Courts will not yield to accusations against jurors lightly made and supported by doubtful evidence. *Com. vs. Flanagan,* 7 *Watts & Sergeant,* 420, 421, 422.

*Third.*—The newly discovered evidence relied on by Defend-

ant is insufficient to justify the Court in awarding a new trial, because :

*1st.* It is cumulative. 10 *Wend.* 293 ; *Com. vs. Flanagan, Watts & Sergeant,* 723.

*2d.* Its only effect is to impeach the testimony of the witness, Ellen Dugan.

The rule of law is well established that the newly discovered evidence must go to the merits of the case, and must not merely be offered for the purpose of impeaching a witness. *Wharton's Cr. Law, Sec.* 3084–5–6 ; *Com. vs. Flanagan,* 7 *Watts & Sergeant,* 423 ; *Com. vs. Waite,* 5 *Mass.* 261 ; *Hammond vs. Wadhams,* 5 *Mass.* 353 ; *Chatfield vs. Lathrop,* 6 *Pick.* 473, *note* 1.

*3d.* The evidence if admitted would not justify a different verdict. If with the newly discovered evidence before them the jury ought to return the same verdict, the Court is bound to deny the application. *Wharton's Cr. Law, Sec.* 3189 ; *Com. vs. Flanagan,* 7 *Watts & Sergeant,* 423.

*Fourth.*—The evidence of the quarrelsome character of the deceased was inadmissible.

(*A.*) The provocation under which the Defendant acted must be judged of by the *res gestae,* and the evidence must be confined to the facts and circumstances attending the transaction. *Com. vs. Hillard,* 2 *Gray,* 294.

(*B.*) The evidence of previous threats by the deceased to kill the Defendant Tripp, constituted no part of the *res gestae,* and it is conceived would have been inadmissible upon the trial of Tripp—but certainly upon the trial of Dumphy. Such evidence would have thrown no light upon the transaction, and its admission by the Court would have extended a rule of at least doubtful propriety farther than is warranted by either principle or authority.

(*C.*) The Court will never grant a new trial on account of the rejection of testimony, unless it appears that the Defendants' rights have been prejudiced thereby. Admitting that previous threats of the deceased were legitimate evidence, yet as there is no evidence whatever indicating any assault on the part of the deceased, or any mutual combat, the mere evidence of previous threats could not have changed the result.

*Fifth.*—There was no error in the allowance of a renewal of

a challenge previously made and withdrawn. Either party may interpose a challenge at any time before the jury is sworn, and a decision of the triers only is final.

*Sixth.*—The rule at common law was well settled that the testimony of a Defendant was not admissible in favor of a co-Defendant, until after trial and acquittal, or conviction; and this whether the Defendants were tried jointly or separately. *Wharton Cr. Law, Sec.* 790; *Com. vs. Marsh,* 10 *Pick.* 56; *People vs. Bill,* 10 *Johnson,* 95.

Points and authorities of Defendant:

*First.*—A new trial should be granted on the affidavits.

(*A.*) The preadjudication of the jurors is sufficient ground. *American Crim. Law, 4th Ed. Sec.* 3152 *and* 3221.

(*B.*) It should also be granted on the ground of newly discovered evidence. The rule as to cumulative or impeaching evidence is not absolute. The peculiar circumstances of a case should be considered, and if, on all the affidavits taken together it is apparent that justice would be promoted by a new trial, it should be granted.

*Second.*—The Court erred in allowing a second challenge to be interposed to the juror Rye.

GORDON E. COLE, Attorney General.

ALLIS & PECKHAM, Counsel for Defendant.

*By the Court*—FLANDRAU, J. The Defendant was convicted of the crime of murder in the first degree in the District Court of Anoka County, and moves this court for a new trial. He was indicted jointly with one Sandford Tripp, but tried separately. The points made by his counsel in support of this motion are:

*First.*—That the indictment is insufficient in not charging the degree of murder in which the prisoner is indicted.

*Second.*—That the affidavits show that several of the jurors had prejudged the case before going into the box.

*Third.*—That the court should not have allowed a second challenge to be interposed to the juror Rye.

*Fourth.*—That the court should have allowed the evidence of the quarrelsome character of the deceased.

*Fifth.*—The court should have allowed the witness Sandford Tripp to be sworn.

*Sixth.*—That the newly discovered evidence is sufficient to allow a new trial.

The indictment in this case is in the form prescribed by the statute. The objection made to it is, that it should state the degree of murder in which the Defendant is charged, instead of merely charging him with murder. The form given in the Statute runs thus: " A. B. is accused by the Grand Jury of the County of ———, by this indictment, of the crime of, (here insert the name of the offence if it have one), such as treason, *murder*, arson, &c., committed as follows." Then come the allegations that charactize the crime, and to which the proof is directed, and upon which the Defendant must be convicted, if at all. It may be a question whether an indictment that in the opening, charged a lesser offence, as for instance, murder in the second degree, would sustain a conviction for murder in the first degree, even if the subsequent part of the indictment fully charged the greater offence, because there would be an inconsistency in the two parts that might mislead the Defendant to his serious prejudice; but when the bill charges the greater, there can be no confusion, and a conviction may be had for that, or any lesser degree of the same offence. The form given, describes the crime simply as murder, and we have held that the form is really part of the statute, and when followed will be in all cases sufficient, unless it should lead to some absurd results, or conflict with some established right. *State vs. Anne Bilansky*, 3 *Minn.* 427. We cannot see how the Defendant could be embarrassed by the form used, and think it sufficient.

The State challenged Mr. Rye for actual bias when he was called as a juror in the case, but at once withdrew the challenge. Some time after, but before the jury was sworn, the State renewed the challenge to Mr. Rye, for actual bias, the counsel for the prisoner objected, but the court permitted the challenge to be interposed, and on a trial of the facts the juror was excluded. It is difficult to see how any error can be

attributed to the court in allowing a renewal of the challenge. The statute allows it to be made at any time before the jury is completed, even after the juror is sworn, if good cause be shown. *Comp. Stat.* 773, *Sec.* 16. The only act that would seem to cut off the right of a challenge is the trial and decision of the triers, which is pronounced final by the statute. *Comp. Stat.* 775, *Sec.* 35. It would certainly preclude any further investigation should they find the challenge true, because the Statute says, the juror in such cases, "must be excluded." And reason dictates that when bias has been established against a juror, no possible combination of circumstances would be able to remove the disqualification and render him competent to sit in a case. Yet should the triers find the challenge not true, and the juror competent, while the statute evidently intends that such finding shall end the matter, it is easy to see how circumstances might transpire that would permit the court to exclude the juror on its own motion, or upon the objection of either party, if made before the jury was completed ; as for instance, if the juror after the finding of the triers in favor of his competency, should openly express himself determined to convict or acquit the prisoner. It cannot be that in such a case the court or the parties would have no alternative, but to go to trial with the juror, or discharge the whole jury. These remarks are only to show that the right of challenge should not be confined within narrower limits than the statute absolutely demands, as it is designed to purify the jury by freeing it of all influences that may tend one way or the other to divert its action from the straight line of impartiality ; an end equally desirable to both the State and the accused.

The affidavits of Smiley, Greenwald and Sheppard, which were read on the motion to prove improper conduct on the part of three of the jurors, when fairly tested in connection with the whole case, present a very weak showing upon which to grant a new trial. If the fact that these jurors had prejudged the case in the manner alleged stood admitted, there would be very little doubt that the prisoner should have the benefit of a retrial before an impartial jury ; but how does the matter stand ? Each of the affiants deposes that he heard one

of the three jurors make the remark about the guilt of the prisoner, and each of the three jurors deposes distinctly that he did not make the remarks attributed to him, or any kindred remarks ; which leaves the proof, to say the least, *in equilibrio*. This has been held a sufficient answer to such an application. 3 *Foster Rep. N. H.* 321. The welfare of society requires that great weight should be given to verdicts of juries solemnly pronounced, and it will not do to allow them to be vacated, unless for grave reasons, clearly established. It is doubtful whether a case, and especially a capital case, could arise, in which some one could not be procured to make affidavit of misconduct or irregularity on the part of some member of the jury. The temptation would be great where life is involved, and the risk of detection small. Testimony, therefore, of this character, made to impeach a verdict, should be received with the utmost caution, and tried by the strictest test. We have no opportunity of knowing who the witnesses are, or what weight their evidence is entitled to, as emanating from credible or unreliable sources. There should, therefore, be at least a sufficient preponderance of evidence to make the circumstances probable ; here we have a flat denial of every fact alleged, by a witness whose existence at least we feel satisfied of from his being a juror of Anoka County. It would be a dangerous precedent to set aside a verdict upon this proof.

The fourth point made by the counsel for the prisoner has been a little more difficult of solution. But we are fully satisfied that the authorities do not sustain the position of the prisoner's counsel in his offer. The character of the deceased *per se*, can never be material in the trial of a party for killing him, because it is as great an offence to kill a bad, as it is to kill a good man, or to kill a quarrelsome and brutal man, as it is to kill a mild and inoffensive man. Therefore, if the killing is proven to have been with the felonious intent, the character of the deceased can in no manner affect the result. The rule in respect to the admission of proof of the quarrelsome or violent character of the deceased is this : Where the killing is under such circumstances, as to create a doubt as to the character of the offence committed, the general character of the deceased may be shown, because then it becomes a material and per-

haps necessary fact to enable the jury to ascertain the truth, and as such is involved in the *res gestae ;* but without the character is in some way an essential part of the *res gestae*, it cannot be examined into, because " it would be a barbarous thing to allow A. to give as a reason for killing B. that B.'s disposition was savage and riotous." *American Crim. Law*, *3d Ed.* 296. It was held in the trial of an overseer for the murder of his employer, that it was not competent for the prisoner to prove the general temper and deportment of the deceased towards his overseers and tenants. *State vs. Tilley,* 3 *Iredell*, 424. "When, however, it is shown that the Defendant was under a reasonable fear of his life from the deceased's temper, in connection with previous threats, &c., it is sufficiently part of the *res gestae* to give in evidence as explanatory of the state of defence in which the Defendant placed himself." *Wharton on Homicide* 215, 220 ; *American Crim. Law,* 296.

The principle upon which this testimony alone is admitted, arises from some peculiar condition in which the facts of the killing as proved leave the crime. If the facts as established free the case from uncertainty and doubt, and leave the killing an act of premeditated design on the part of the Defendant, the quarrelsome character of the deceased can in no manner change the nature of the offence ; but if circumstances surround the transaction which leave the intention of the Defendant in committing the crime doubtful, or evenly balanced, or in any manner indicate provocation on the part of the deceased, testimony of the quarrelsome character of the deceased would then become sufficiently part of the *res gestae* to be admitted to explain or throw light upon the encounter.

The books make a distinction between allowing proof of the bad character of the deceased, and the good character of the accused, and place it upon the ground that as all reasonable doubts are to be weighed in the balance in favor of the Defendant, he is, therefore, entitled in all cases to give his good character in proof, because what would be a clear state of facts and circumstances to warrant a conviction against a man of bad or unknown character, might, when applied to a man of high standing and unimpeachable character, appear inconsist-

ent with his guilt, or so enshroud the transaction with doubt as to justify an acquittal. It will, also, be found, as a general rule, that when the facts are clear that the crime has been perpetrated, the good character of the accused should have no weight with the jury, because it is none the less a crime for a man of good character to kill another, than for the vilest of the human race to commit the same act.

We will not undertake to discuss these distinctions; suffice it to say, that the rule is well established that proof of the good character of the accused may always come in, and after it is in, its weight will be matter of consideration for the jury under the instructions of the court, which will always vary, as the other proof is clear or doubtful, positive or circumstantial, in each particular case; and we think it is equally well settled that proof of the quarrelsome character of the deceased can only be allowed when from the nature of the main proof in the case such character becomes in some way involved in the *res gestae;* when admitted, its weight with the jury should be governed very much by the same rules that apply to the good character of the accused.

The case of *The Commonwealth vs. Hilliard,* 2 *Gray,* (*Mass. R.*) 294, cited by the Attorney General, places the exclusion of proof of the quarrelsome character of the deceased upon the ground that it is too remote, and if it could be admitted, the Commonwealth could give evidence of his mild and peaceable character, &c. However the facts of that case may have been, the reasons of the learned court for excluding the evidence are hardly sufficient to support the decision. That there are cases in which it is admissible we have no doubt, which is an answer to the reason of its being too remote in its nature; and that in all cases where the good character of the accused is proven, it may be rebutted, and proven bad by the State, seems to us to remove the other reason assigned. *American Crim. Law, page* 298.

The prisoner's counsel contends that the facts of this case bring it within the rule which allows the quarrelsome character of the deceased to be shown, which, after giving the rule as we understand it, leads us to an examination of the case in this respect.

The main witness, and the only eye witness of the killing, was the wife of the deceased; she gives a very detailed statement of the whole affair, from the time the prisoners came to the house until they left. She describes the killing minutely, with all the accompanying incidents, but from her whole statement not one word can be gleaned that relieves the case from an unprovoked and brutal murder. She describes the breaking of the windows and drinking glasses, and the kicking down the bar, which preceded the attack upon the deceased. She tells of the deceased being dragged by the hair of the head from the bar room into the dining room, and out again into the bar room. She describes each stab with the knives that was given, even to the cut in the hand that the deceased received in endeavoring to arrest a blow. She, also, mentions the stroke with the hatchet given by the Defendant. In the condition of the house, and the appearance of the deceased, this witness is corroborated by the other witnesses in the case in almost every particular, making it highly probable that the transaction was as she related it.

The character of the main witness is assailed by the defence to some extent, and the counsel insists that as she is partially impeached, the damage and confusion about the house taken in connection with the doubts casts upon her veracity, should be held to raise a presumption that a great conflict had taken place, and so surround the case with doubt as to allow them to prove the quarrelsome disposition of the deceased, in order that the jury might infer provocation. The difficulty is, that any doubt about the character of the killing must be based entirely upon a supposititious state of facts, and not upon the real facts as proved, which in themselves do not sufficiently admit of doubt. The story of the main witness, so far from leaving room for any doubt about how the affair occurred, is direct and positive that the killing was unprovoked and intentional; and the attending circumstances which were proven, so far from casting doubt or uncertainty upon her narrative of the killing, tend strongly to substantiate it; everything was described by the witnesses who examined the house and the body of the deceased to be very much in harmony with her account, and we think it cannot be said that the partial im-

peachment her testimony received was in itself sufficient to change the position of the case, so as to admit the proof offered.

While on this part of the case, I will notice the offer of the Defendant's counsel to prove that the deceased threatened to kill the Defendant Tripp about ten days before the homicide. It seems to us a sufficient answer to this offer to say that it should have been accompanied by the offer to show that the threat had been made to the Defendant Tripp, or had been communicated to him. If it was not done in a manner that made Tripp cognizant of the fact, it could not have been material to the case; and it is quite doubtful whether it could be material on the trial of Dumphey in any view.

The offer to swear Tripp, a co-defendant, as a witness for Dumphey was very properly overruled. We might rest this point upon the rule that it has once been decided by this court, or rather its predecessor of the Territory. *United States vs. Baker*, 1 *Minn.* 207. But we think the decision in that case was based upon sound principles, which we approve. It has stood the test of five or six sessions of the Legislature, without any alteration of the law having been made in consequence of the construction which that case placed upon it. See in this connection *Sections* 3, 4, 5, *p.* 782, *Comp. Stat.*, which give great strength to the view taken by the court in the case of *Baker vs. The United States*.

The newly discovered evidence was not of a character that would authorize a court to grant a new trial. It is merely that the witness Ellen Dugan related before the trial a different story about the killing from the one she detailed upon the trial. This evidence does not go to the merits in any way. The effect of it if given on a subsequent trial would not be to prove that the facts of the killing were different from those detailed by the witness, but merely that she had previously said they were so, which would go only to contradict or rather discredit the statement of the witness as any other impeaching fact. It is unnecessary to cite authorities to show that cumulative or impeaching testimony is never sufficient to warrant a new trial, even if not known until after the first trial has ended.

The motion for a new trial is refused.