[Criminal No. 134.    Filed March 15, 1899.]

[56 Pac. 971.]

JOSEPH DICKSON, Defendant and Appellant, v. TERRITORY OF ARIZONA, Plaintiff and Respondent.

1. LIVE-STOCK SANITARY BOARD—CERTIFICATE OF RECORDING BRAND—DATE OF RECORDING—SUFFICIENCY—LAWS ARIZ. 1897, ACT No. 6, SECS. 49, 50, CONSTRUED.—A certificate of a cattle-brand issued by the live-stock sanitary board, under the provisions of section 49, *supra,* making it *prima facie* evidence of ownership of cattle bearing such brand in prosecutions under the statute, or under the laws of the territory in regard to the unlawful disposition of animals of the bovine kind, complies with the requirements of section 50, *supra,* and authenticates the date of the recording of the brand; where it recites "that the same has been recorded at 4:30 P. M. o'clock on the day, month and year below written, to wit: [designated brand for cattle]. Given under my hand and seal this 29th day of April, 1897."

2. APPEAL AND ERROR—RECORD—REVIEW—JURY—PREJUDICIAL REMARKS NOT IN RECORD — ERROR PREDICATED ON.—Prejudicial remarks of an attorney, made in an argument to the jury, not preserved in the record, will not be reviewed.

3. CRIMINAL LAW—LARCENY OF CALF—FELONIOUS INTENT—EVIDENCE —SUFFICIENCY.—Where the evidence showed that a stray cow and calf, both of the same color, the calf unmarked, the cow branded "B," which defendant knew to be the brand of the prosecuting witness, had ranged in the vicinity of defendant's corral for some time; that on the day the larceny was committed the defendant and his employee roped and took the calf into the corral and left it there, without branding, with other cattle; that the Blair cow followed it to the corral, and the next morning bellowed till the defendant's brother and the employee turned the calf out, when it went off with the cow to the owner; that defendant testified that he did not know whose calf it was and did not look for its mother, and therefore did not brand it; that others testified the cow and calf had been around there for six or seven months, and that the cow was looking on when defendant took the calf away, it is sufficient to justify the jury in inferring a felonious intent in the taking of the calf, and a verdict of guilty will not be disturbed.

APPEAL from a judgment of the district court of the Fourth Judicial District in and for the County of Yavapai. R. E. Sloan, Judge. Affirmed.

The facts are stated in the opinion.

T. W. Johnston, for Appellant.

C. F. Ainsworth, Attorney-General, and H. D. Ross, District Attorney, for Respondent.

Where there is any evidence to go to a jury on a controverted fact upon the question as to whether the defendant committed the alleged crime or not, and the jury has passed upon this question, this court will not review their finding. *People* v. *Maroney,* 109 Cal. 277, 41 Pac. 1097; *People* v. *Ross,* 115 Cal. 233, 46 Pac. 1059; *People* v. *Durant,* 116 Cal. 179, 48 Pac. 75; *People* v. *Bennett,* (Cal.) 50 Pac. 703; *Jones* v. *People,* 2 Colo. 351; *State* v. *Kronert,* 13 Wash. 623, 43 Pac. 876.

DAVIS, J.—The defendant, Joseph Dickson, was tried at the June term, 1898, of the district court of Yavapai County, upon an indictment charging him with the crime of grand

larceny. He was convicted and sentenced to a term of two years' imprisonment in the territorial prison. The appeal is from the judgment of conviction and from an order denying the defendant's motion for a new trial.

The subject of the alleged larceny was a certain calf, the property of one Robert Blair. The assignments of error made by counsel for appellant are classed in his brief under three heads: 1. The admission of incompetent evidence; 2. Prejudicial remarks of the district attorney in his closing argument to the jury; and 3. That the verdict and judgment are not supported by the evidence. The first error assigned by the appellant is, that for the purpose of proving the ownership of the animal alleged to have been stolen, the territory was permitted to introduce in evidence, over objection, what purported to be a certificate from the secretary of the live-stock sanitary board of Arizona Territory of the registration of the brand of Robert Blair in the territorial brand-book, but which certificate, it is claimed, was lacking in a material particular,—namely, the date at which said brand was recorded with the sanitary board. Act No. 6 of the Session Laws of 1897, being an act "to codify and revise the laws with reference to live-stock," contains the following provisions relating to the recording of brands, and the effect thereof as evidence of ownership:

"Sec. 49. For the purposes of this act and in all the prosecutions arising under the same, or in the prosecution of any offense arising under the laws of this territory in regard to the unlawful taking, handling, killing, driving, or other unlawful disposition of animals of the bovine kind, . . . the proof of the brand by a certified copy of the registration thereof in the territorial brand-book, under the seal of the said board [live-stock sanitary board], certified to by its secretary, shall be sufficient to identify all . . . neat cattle, and shall be *prima facie* proof that the person owning the recorded brand is the owner of the animal branded with such brand.

"Sec. 50. At any time before the first day of July, after the passage of this act, it shall be the duty of persons, firms, companies, or corporations owning brands and marks, to file the same with the said board, and the said board shall record the same in a book of brands and marks, and shall furnish to the owners certificates thereof under the seal of the board, free

of charge, which said certificates shall be competent evidence of the registration of such brand and *prima facie* evidence of ownership. It is hereby made the duty of said board to transcribe in a territorial brand-book all of said brands and marks; thereupon all of said brands and marks shall be deemed to have [been] duly recorded in such territorial brand-book by the owners of said brands and marks. After said first day of July next, no one shall file any brand which has before that time been filed by another. With the brand offered for registration before July first aforesaid, the owner shall furnish a certificate of the recorder of his county that the brand so offered for registration is the recorded brand of the owner.''

The certificate introduced in evidence, the admissibility of which was questioned, is in the following form: ''No. 72. Territory of Arizona. Office of the Live-Stock Sanitary Board, Phœnix, Arizona. This is to certify that Robert Blair, of Prescott, county of Yavapai, Arizona, has filed in the office of the live-stock sanitary board a certificate, issued by the county recorder of Yavapai County, showing him to be entitled to the use of brands and marks below given, by virtue of a former statute, and that the same have been recorded at 4:30 P. M. o'clock on the day, month, and year below written, to wit: [Designated brand for cattle.] Given under my hand and seal, this 29th day of April, 1897. [Signed] Chas. W. Pugh, Secretary Live-Stock Sanitary Board. [Seal.]'' The point is urged by the appellant that, inasmuch as the method of procedure prescribed for obtaining a certificate of brand prior to July 1, 1897, is different from that which was to be operative thereafter, the time of the actual recording of the brand is an essential element in the certificate; particularly in view of the dignity which the statute accords to a proper certificate, and the fact that this is a criminal prosecution. A determination as to the correctness of this position is unnecessary, in view of the interpretation which we give to the certificate in question. It is our opinion that the latter substantially complies with the requirements of the statute, and does, in fact, authenticate the date of the recording of the brand. Despite the somewhat faulty construction, we think the document, fairly and reasonably interpreted, declares the brand to have been recorded at 4:30 o'clock P. M., on the twenty-ninth day of April, 1897.

being the same day on which the certificate purports to have issued.

The second error assigned, predicated upon alleged · remarks of the district attorney in his closing argument to the jury, relates to a question which is not properly before us for review. The appellant has failed to preserve in the record the remarks of which he complains, and we are thereby precluded from any consideration of their effect upon the jury.

It is urged finally, for reversal, that the verdict and judgment are not supported by the evidence. On the trial there seemed to be but little controversy over the main facts, the case hinging principally upon the question as to whether or not there was felonious intent. The evidence showed that the defendant lived at Skull Valley, which was a railroad station and post-office, and controlled a pasture inclosure within five hundred yards of the station, in which were confined cattle bearing his own brand of "J S"; that for some time prior to the twenty-seventh day of April, 1898, there had been ranging in the vicinity of the station a stray cow and calf, both being of a pale red, or buckskin, color, the calf unmarked, the cow branded "B," which was known to the defendant as the brand of Robert Blair, a stockman whose ranch was sixteen miles off; that in the afternoon of the above-mentioned day, the defendant assisted his employee, one Dick Hall, to rope and catch the calf referred to, and to lead it from a point near the station to defendant's pasture, into which they placed it, without branding, among other cows, steers, yearlings, and calves; that the Blair cow had followed at some uncertain interval, and appeared early the next morning at the outside of the inclosure, bellowing to the calf in a manner significant of the relationship, the calf being not more than six or seven months old; that soon thereafter the calf was turned out of the pasture by Hall and defendant's brother and went off with its mother; that, on the same day, both animals went into a round-up of cattle in that section, through the means of which they were returned to their owner. The law defines larceny as the felonious stealing, taking, carrying, leading, or driving away the personal property of another. Pen. Code, par. 762. The defendant, testifying in his own behalf, in his direct examination, explained that he put the Blair calf in his inclosure because

he thought it was his own. On cross-examination, he testified, in part: "Q. You say you never saw this calf you put in the pasture, before, in your life?—A. I might have seen it. I didn't pay any notice to it. I did not know who it belonged to—whose it was.—Q. You did not look for the mother when you saw it down there that day?—A. No, sir; I did not see its mother.—Q. You did not look for its mother?—A. No, sir.—Q. You were satisfied this was your calf when you put it in there?—A. No, sir; I did not know.—Q. Therefore, you did not mark it?—A. No, sir.—Q. You did not brand it?— A. I was not sure whether it was my calf or not." A witness for the defense, Hardy Miller, knew this particular cow and calf well. They had ranged together about the station and defendant's premises for six or seven months. It was a "B" cow. He had noticed them frequently, and had seen the calf when he was in defendant's company. William Duff Dickson, a witness for the prosecution, testified to having seen the Blair cow and calf pretty nearly every day about the station, and to have seen the cow standing by the roadside looking towards the calf while the latter was being led off by the defendant towards his own premises. Witness knew it was Blair's cow, because it had "B" on it. It is a well-settled rule that the intent with which a criminal act is committed need not be shown by direct proof, but may be inferred from what the party does, and also from all the facts and circumstances under which the act complained of was committed. We think there was evidence in this case from which the jury could reasonably have inferred that the taking of the calf by the defendant was with felonious intent, and that the verdict rendered was not therefore the result of passion or prejudice. The evidence may not seem to us of the most convincing character; but its sufficiency having been passed upon by the jury, who saw the conduct and demeanor of the witnesses, and by the district judge, who refused the motion for a new trial, we are not now justified, as an appellate court, in disturbing the verdict. We find no reversible error, and the judgment is affirmed.

Street, C. J., and Doan, J., concur.