[Criminal No. 613.   Filed June 19, 1925.]

[237 Pac. 182.]

## JOYCE W. SHEPARD, Appellant, v. STATE, Respondent.

1. CRIMINAL LAW—DIFFERENT OBJECTION TO TESTIMONY ON APPEAL
   THAN AT TRIAL HELD IMMATERIAL. — Where defendant at trial
   objected to admission of shell and wadding in evidence for lack
   of identification, but on appeal abandoned that objection for objection that surroundings where shell was found were not the same
   as at time of homicide, he conceded identification of shell and
   wadding, and objection on appeal was thus immaterial.

2. CRIMINAL LAW—SHELL PROPERLY EXCLUDED WHEN NO ONE TESTIFIED TO SHOOTING OR LEAVING EXPLODED SHELLS AT PLACE WHERE
   FOUND.—Where prosecution introduced in evidence shell and wadding found near homicide, and defendant, on rebuttal, testified to
   hunting rabbits near place in question, and also offered in evidence another shell alleged to have been found in vicinity by

1.   See 2 R. C. L. 70.

brother on date of homicide, such shell was properly excluded, where neither defendant or anyone else testified to shooting rabbits or leaving exploded shells there.

3. CRIMINAL LAW—INSTRUCTIONS, THOUGH CONFUSING, COULD NOT BE MISUNDERSTOOD AS TO SELF-DEFENSE, IN VIEW OF OTHER INSTRUCTIONS.—Where court instructed that, if jury find deceased made motions for apparent purpose of defending self, defendant could not use such attitude as a pretext for slaying deceased, *held*, though such instructions were more or less confusing, they could not be misunderstood, taken as a whole, where other instructions fully and fairly submitted right of self-defense.

See (1) 17 C. J., p. 70, n. 43.    (2) 16 C. J., p. 619, n. 46 New. (3) 16 C. J., p. 1053, n. 93.

APPEAL from a judgment of the Superior Court of the County of Maricopa. M. T. Phelps, Judge. Affirmed.

Mr. Herman Lewkowitz and Mr. Harold J. Janson, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson, and Mr. Frank J. Duffy, Assistant Attorneys General, for the State.

ROSS, J.—The appellant (hereinafter referred to as defendant) appeals from a judgment of conviction of first degree murder, with punishment fixed at life imprisonment. He assigns three errors; and to consider such errors it is necessary to state, not in detail, but in a general way, some of the salient facts surrounding and leading up to the killing.

The deceased, Sam Hall, and defendant were both farmers, living on adjoining farms, near Cashion, in Maricopa county. Until about July, 1924, they were friends, and from time to time exchanged work. They had differences in July which culminated in the shooting and killing of Hall on August 11, 1924. Their troubles were over a patch of cotton situate on the Hall farm, but claimed by both. At about 8 o'clock in the morning of the last-named date Hall and

Mrs. Hall, from their house, saw defendant, who lived some three hundred yards from the cotton patch, leave his home going in the direction of the cotton patch, and carrying in his hands a shovel and a shotgun. The deceased thereupon proceeded to the cotton patch; his wife following a few feet behind. The evidence is in conflict as to what was said and done when the deceased and defendant came close enough to talk to each other; the contention of the prosecution being that defendant was tearing an opening for a gateway in fence around cotton, and when told by deceased to quit it he reached for his shotgun, which was standing nearby, whereupon deceased said, "Here I am, shoot; I am unarmed," and defendant then shot deceased, inflicting wounds from which he died soon thereafter without speaking. Thereupon defendant removed the exploded cartridge from the gun and pointed the gun in a threatening manner at Mrs. Hall, who fell to the ground behind a bush. Defendant then ran away. The defendant's claim at the trial was self-defense; he stating that, at the time he shot, deceased had grabbed a six-shooter which he was carrying on his person.

It is obvious from the verdict that the jury did not place any confidence in the plea of self-defense or in the evidence in support thereof; but, on the contrary, the jury must have believed defendant's act was without excuse or justification, and deserving of the very high penalty of life imprisonment. The jury's decision and its binding effect is not questioned, and, unless the court erred to the prejudice of the defendant in the course of his trial, the judgment must be affirmed.

It is said, however, that the admission in evidence, over defendant's objection, of a shotgun shell and shotgun wadding found the same day, where, or near where, defendant stood when he shot deceased, was prejudicial error. The objection to this evidence at

the trial was that it had not been properly identified, but here the objection is that it was not shown that the ground and surroundings were the same when these articles were found as they were at the time of the homicide. The defendant, having abandoned the grounds of objection as made below, must be regarded as conceding that the shell and wadding were properly identified with the gun he used to shoot the deceased, and, that being established, the objection here urged for the first time, even if true, would be immaterial.

This evidence was introduced by the prosecution for the purpose of corroborating the testimony of Mrs. Hall, to the effect that defendant removed the exploded shell after shooting her husband and menacingly pointed the gun at her. To meet this inference defendant testified that he had on many occasions hunted rabbits at or near the place in question, and offered in evidence a shotgun shell that had been found at or near there by his brother, at 3 o'clock in the afternoon of August 11, 1924, which was ruled out on objection by the prosecution. This ruling is assigned as error. It was not error for the reason defendant did not testify that he ever shot any rabbits in that vicinity, or that he had ever left any exploded cartridge there; nor did anyone else so testify.

It is next contended the court misdirected the jury as to the law of the case in giving the following instruction:

"Except as to the rule that the state must prove the guilt of the defendant in all its aspects beyond a reasonable doubt, the law of self-defense applies to the deceased and to the defendant alike. Its provisions could be invoked as well by the man slain as by the one who slew him; and, if you find beyond a reasonable doubt that the deceased did make any motions for the purpose of apparently lawfully defending himself against an attack upon him by the defendant,

then, and in that case, the defendant could not use the deceased's attitude of self-defense as a pretext for slaying him.''

It is doubtful if this instruction, when analyzed in connection with the law of self-defense, is entirely correct. That right, however, is always correlative.' The affirmative statement of the rule as to defendant's right to defend himself carried the implication, although it is not often stated to the jury, that if the deceased at the time was not the aggressor his life may not be taken simply because he makes an attempt to employ means at hand to defend himself. While the deceased is not on trial, as is the defendant, his conduct is in fact a vital issue, and upon. the decision of that issue must hinge the issue of defendant's guilt or innocence. If the deceased was lawfully acting in defense of his person, and the jury should so find, the verdict should be one of guilt, and the instructions should be so formed as to justify such a verdict. If the deceased's conduct at the time was such as would have induced a reasonable person to apprehend his life was in danger, or that he was about to suffer great bodily harm, and defendant acted upon such fears, he would be justified and entitled to an acquittal. The instruction in effect submitted these propositions and drew the deduction therefrom that, if the deceased at the time made demonstrations to lawfully defend himself against an attack, and the jury so found beyond a reasonable doubt, defendant could not take such demonstration as a pretext to slay him. This part of the instruction, while perhaps not an incorrect statement of the law, is so worded as to be more or less confusing, but, when taken in connection with the instructions as a whole, we hardly believe it could have been misunderstood by the jury. In other instructions the right of self-defense was fully and fairly submitted. The defendant cites two cases, in which instructions were held to be erroneous, as sup-

porting his contention that this instruction does not state the law. In *McMaster* v. *State* (Miss.), 29 South. 522, a somewhat similar instruction was condemned. However, the instruction in that case predicated the defendant's right to defend himself against a demonstration by the deceased, upon the latter's belief that his life was in danger at the hands of defendant. The court said of this instruction:

"It is confusing to the jury, leaves it questionable as to whether the deceased or the slayer is being tried, and puts a ground of acquittal of the deceased, if he were on trial, as a ground of conviction of the accused. What Ward [deceased] might or might not have thought, or have been justified in thinking, as to his own apparent danger, seems to be made the test of the guilt or innocence of McMaster, while his guilt or innocence is, in fact and in law, wholly independent of what Ward thought, or was justified in thinking or doing."

The case was reversed because of the instruction, but the court said, "We do this doubtingly."

The ruling in *Casner* v. *State,* 42 Tex. Cr. R. 118, 57 S. W. 821, construing an instruction, was that it was so worded as to make the defendant responsible for what the deceased believed defendant's intent to be in going to the place deceased was and not what defendant's intent actually was. The present instruction is not like these, and does not call for the same ruling.

We have carefully examined the only assignments made, and are satisfied that defendant was given a fair trial.

The judgment of conviction is therefore affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.