[Criminal No. 826. Filed March 2, 1936.]

[55 Pac. (2d) 312.]

JACK SULLIVAN, Appellant, v. STATE OF ARIZONA, Respondent.

Mr. S. K. Williams and Mr. John J. McCullough, for Appellant.

Mr. John L. Sullivan, Attorney General, Mr. Elmer C. Coker, Assistant Attorney General, and Mr. Frank E. Thomas, County Attorney, for Respondent.

LOCKWOOD, C. J.—Jack Sullivan, hereinafter called defendant, was informed against by the county attorney of Cochise county for the crime of murder. He was duly tried on such information, and the jury returned a verdict finding him guilty of murder in the first degree, and fixing the penalty at death. From the judgment rendered on the verdict and the order overruling the motion for new trial, this appeal has been taken.

In order that we may pass properly upon the various assignments of error, it is necessary that we first set forth the ultimate facts disclosed by the record, stated as strongly in support of the verdict as the evidence will reasonably justify as, under our oft-repeated rule, we must assume them to exist. About 11 o'clock in the morning of March 13, 1935, a Southern Pacific freight train stopped at Bowie, Arizona. William E. Beckstrom, a United States immigration officer, whose duty it was to inspect freight and passenger trains for aliens, noticed that there were two men on top of one of the freight cars and others coming out of an end door of the car. Seeing that the side door of the car was sealed, he immediately went to the room of John Bradberry and informed him of the situation. Bradberry, who was a duly appointed deputy sheriff of Cochise county and also a special officer for the railroad company, was preparing for a bath, but hurriedly pulled on shoes, trousers and a shirt, and the two officers went down to the railroad tracks. Bradberry wore his deputy's badge on the outside of his shirt, but had no weapon of any nature on his person. When they arrived at the point where the freight car above referred to had stopped, he told the men on top of the car to come down, in firm but courteous language. They did so, and Bradberry then entered the sealed car by the open end door and told the men that were in there to come out. Among them were defendant and one John Vale. As each of the men reached the ground, Beckstrom questioned them as to where they were from, in order to determine whether there were any aliens who were unlawfully in this country. Defendant first informed him that he was from San Francisco, later from Redwood City, California, and finally from Louisiana. Up to

this time Bradberry had not spoken to defendant except as he told the men in the car generally to come out. There were some eleven men in and upon the car, and, after they had gotten to the ground, Bradberry, noticing that two of them had grapefruit in their possession which he suspected might have been taken from a car on the train, told them to line up in order that he might search them to see if they had any stolen property in their possession. They did as requested without any objection, and he began searching them and their suitcases, starting at the east end of the line. The third man whom he searched was John Vale. He found a blackjack, or small leather covered and loaded club, in his possession, took it away from him, and tossed it to Beckstrom, who was at that time standing a few feet away on one side. While doing so, he cursed Vale for carrying such a weapon, saying either, "I ought to beat you up for carrying that," or "I ought to hit you over the head," or words to that effect, but made no effort of any nature to strike him. He then turned to search the next man in line. At that moment, defendant, who was at the extreme western end of the line, with some five or six men between him and the one Bradberry was searching, walked up behind the latter with a loaded revolver in his hand, and, pointing it at Bradberry, said, "Stick them up, you son-of-a-bitch." Bradberry immediately turned to face defendant, and, as he did so, threw up his hands and struck at the gun in the latter's hands. At practically the same instant, defendant discharged the gun; the bullet entering Bradberry's abdomen. The latter immediately clutched at his body where the bullet had entered, and, almost at the same time, Vale made an attack on Beckstrom, attempting to take the latter's gun from him; it then being in a holster at

his side. Beckstrom pulled out the gun and fired one shot at Vale which struck him in the body. The latter immediately retreated, but defendant then opened fire upon Beckstrom, and they emptied their guns at each other. After this, defendant took flight and disappeared from view in the brush upon the desert. Three days after the shooting Bradberry died as the direct result of the gunshot wound inflicted by defendant. A widespread search was immediately made for the latter, and he was apprehended in Redwood City, California, about two weeks later, and brought back to Cochise county by Sheriff Pruitt of Cochise county and Sheriff Talley of Graham county. While returning, they questioned him in regard to the homicide, and he admitted readily that he was the man who had shot Bradberry, but excused himself by saying that he did not mean to kill him, that he thought, when he told Bradberry to "stick them up," the latter would not hesitate to do so, and that he, defendant, could then get away, and that he did not know whether the gun went off accidentally or whether, in the excitement, he pulled the trigger. He was then questioned as to why he had attempted to resist the search which Bradberry was making, and replied that he was wanted in Colorado as a robber and parole violator, and feared that, if he was found, with a gun upon him, he would be arrested and identified and that he thought he could run a bluff on Bradberry and escape. He also stated that he had committed five robberies since he was released from the Colorado penitentiary, and that the gun in his possession had been taken from a police officer in Kansas in somewhat the same kind of a situation as that existing at Bowie at the time of the killing.

All the evidence was uncontradicted and in perfect harmony, several of the men who were in the line

testifying, as well as Beckstrom, the immigration officer, and their stories being substantially in accord. Defendant did not take the stand in his own behalf, and the only evidence which he introduced in no way contradicted that offered by state, but rather confirmed it upon most points. It is seldom that a criminal case comes to our attention in which the witnesses agreed so fully as to the substance of what actually occurred.

We therefore consider the assignments of error in the light of the foregoing facts. They are eleven in number, and we will consider them in their order. The first is that the verdict is contrary to the law and evidence, in that there was no evidence of premeditation, deliberation, or malice aforethought. In most cases of first degree murder, there is no direct evidence of malice or premeditation, as these words refer to the condition of the mind of the killer, and therefore generally can only be inferred by the jury from the facts surrounding the killing. The evidence shows that Sullivan, a paroled convict who knew that he was wanted for parole violation and who, according to his own admissions, had committed at least four or five felonies since his parole, desired to evade identification, and, in an endeavor to escape arrest, stepped up behind Bradberry, holding a gun in his hand, and told him, "Stick them up, you son-of-a-bitch." Bradberry immediately whirled about facing defendant, and the fatal shot was fired while 'the gun was in defendant's hands. We think that this was ample to justify the jury in drawing the inference that the defendant had determined to evade search or arrest, even at the cost of taking the life of Bradberry, if necessary, and that, when he found the latter resisting his illegal and unprovoked assault, he fired the fatal shot with a deliberate and premedi-

tated intent to kill. It is true he says that he had no such intent, but this was a matter for the jurors to determine from the facts as they appeared in the evidence, and we are satisfied that it was sufficient to warrant the conclusion which their verdict shows they did reach.

The second assignment of error is that the trial court allowed Sheriffs Talley and Pruitt to testify as to certain statements which defendant made while en route to Cochise county from Redwood City, for the reason that these statements tended to prove other crimes which the defendant had committed, and that such evidence seriously prejudiced the defendant before the jury. At the trial of the case, the only objection made to the admission of this testimony was that it was a confession obtained under a promise of leniency. Nothing was said in the objection about its referring to other crimes committed by the defendant. For this reason alone, the assignment is not good, for an objection to the admission of evidence must state the reason for the objection, and, if it is not objectionable on the ground stated, it is not error for the court to admit it, even though there might be some other proper reason for its rejection not raised by the objection as made. *Acker* v. *State,* 26 Ariz. 372, 226 Pac. 199; *Shepard* v. *State,* 28 Ariz. 391, 237 Pac. 182. But, even assuming that the objection was sufficient to raise the question of whether the evidence was inadmissible on the ground that it tended to show other offenses, we think that the court did not err in admitting it. The situation, as shown by the evidence, is almost precisely that which appeared in the case of *Lawrence* v. *State,* 29 Ariz. 247, 240 Pac. 863, 868. In that case an officer was killed while attempting to investigate the apparent commission of a petit misdemeanor by the

defendant. Evidence was offered at the trial to show that the defendant was a fugitive from justice, and was wanted in other jurisdictions for one or more capital offenses. We held that this was highly material on the question of the motive of the defendant, using the following language:

"One of the recognized exceptions to the rule excluding evidence of other crimes is that they may be shown to establish motive for the particular offense on trial. In this case defendant was charged with a deliberate and premeditated killing. It is not the usual experience of mankind that a person who is arrested on the charge of a mere misdemeanor will on that ground kill the arresting officer, and it would be but natural for a jury, knowing nothing but the fact that the arrest was made for a misdemeanor, to presume that there must be something which caused the killing besides such arrest. That something might be either some act on the part of the officer justifying the defendant in shooting him in self-defense or it might be something connected with the defendant which would cause him to at all hazards resist the arrest. In the one case the shooting would be justifiable, while in the other it would not. It was highly material for the jury to determine what was the true motive for the defendant's action.

"If as a matter of fact defendant was a person of previous good reputation and unblemished character, who had committed nothing but this one petit misdemeanor, it would be but reasonable to suppose that the officer's conduct was not what the latter had claimed it to be. On the other hand, if defendant were under indictment in some other jurisdiction for a crime carrying with it the death penalty, the jury might well assume that he would deliberately and willfully kill the officer rather than be taken to a place where his identity might be determined and the consequences of his previous crime visited upon him."

And the same rule logically would apply, even though the offense for which defendant was wanted was a felony which did not carry with it the death

penalty, the difference affecting only the weight of the evidence, and not its admissibility. We are satisfied that no error was committed in admitting the statements of the defendant.

■ The third assignment of error is that, even assuming these statements were admissible, the court should have explained to the jury, in its instructions, that they were limited solely to the question of motive. No instruction to this effect was asked by the defendant. In the case of *Lewis* v. *State*, 30 Ariz. 466, 248 Pac. 39, 41, the identical question was before us, and we said:

"We recognize the rule that acts of the defendant other than the one for which he is being tried should not generally be shown, but there are exceptions to this rule. One of such exceptions is that if the competent evidence of the charge laid against a defendant incidentally also shows, or tends to show, he has committed other acts of a criminal character, it is not thereby rendered incompetent; and if a defendant desires to have its effect limited he should ask for proper instructions to that end."

This rule is supported by an almost unanimous line of authorities, but we think it necessary only to refer to the one above quoted from.

■■ The fourth assignment of error is that the court should have granted a new trial on the grounds of newly discovered evidence. This evidence was to the effect that the deceased had a bad reputation for peace and quietude, and that he was a quarrelsome and dangerous person. Assuming, for the sake of the argument only, that this was evidence which defendant could not with reasonable diligence have discovered and produced at the trial, and that it was not merely cumulative in its effect, we think it would have been inadmissible under any circumstances. Evidence of this nature is only admissible in a case of

alleged murder when the issue of self-defense is raised, or when the question arises as to whether deceased or defendant was the aggressor or commenced the difficulty. *Campbell* v. *Territory,* 14 Ariz. 109, 125 Pac. 717; *De Arman* v. *State,* 71 Ala. 351; *State* v. *Dumphey,* 4 Minn. 438 (Gil. 340). In the present case there is not one scintilla of evidence which would raise the issue of self-defense for the consideration of the jury, nor is there the slightest doubt as to who was the aggressor. The testimony of all of the witnesses is that defendant, without any provocation, verbal or otherwise, from Bradberry walked up behind him, presented the gun, and told him to throw up his hands, and that, when he turned, defendant fired the fatal shot. Even defendant's own statement made to the officer did not contend that there was the slightest aggression on the part of deceased, but merely that the gun went off accidentally or that he fired it with the intent to wound and not to kill. Since the alleged new evidence would not have been admissible under any theory raised by the evidence in the case, it could not have been error to refuse a new trial on that ground.

The fifth assignment of error is that the court failed to instruct the jury as to the meaning of the words "premeditation" and "deliberation." The court gave the following instruction:

"In order to constitute it murder of the first degree, the unlawful killing must be accompanied by deliberate and clear intent to kill. This must be formed upon a pre-existing reflection, and not upon a sudden heat of passion, sufficient to preclude the idea of deliberation."

No request was made by defendant that an instruction defining the words used be given. We have held repeatedly that it is not necessary in a criminal case for the court to give instructions upon any particular

matter unless it is requested to do so. *Sisson* v. *State,* 16 Ariz. 170, 141 Pac. 713; *Vincent* v. *State,* 16 Ariz. 297, 145 Pac. 241; *Lenord* v. *State,* 15 Ariz. 137, 137 Pac. 412; *Hann* v. *State,* 30 Ariz. 366, 247 Pac. 129; subdivision 6, section 5042, Revised Code 1928. The terms "premeditation" and "deliberation" are ordinary English words which we presume will be understood by any man of average experience and education. If defendant had any doubt upon this point, it was his duty to ask that they be more fully defined by the court.

 The sixth assignment of error is that the following instruction was incorrect:

" . . . There need be no appreciable space of time between the intention to kill and the act of killing. . . . "

It will be seen that this is obviously an isolated phrase taken from a more complete instruction, and the error predicated is limited to the contention that the exact language quoted is erroneous, regardless of its context. In the case of *Macias* v. *State,* 36 Ariz. 140, 283 Pac. 711, 716, we said as follows, referring to the general question of whether an error could be assigned on a part of an instruction only:

"It is only when the instructions taken as a whole are such that it is reasonable to suppose the jury would be misled thereby that a case should be reversed for error therein. We think as good a test as any of whether specific sentences or phrases of the instructions contain reversible error is as follows: If any instruction directly contradicts the true rule of law so that the jury would be misled thereby on a material point, it is, of course, fatal; if, however, it is merely incomplete in itself, but when taken together with proper qualifications made in some other portion of the instructions it correctly states the law, it is not reversible error, unless it is so ambiguously worded

that a reasonable man, taking the instructions as a whole, would be misled thereby."

But, even assuming that this was not part of the instruction but an instruction upon one phase of the case, complete in itself, we think it is not erroneous. In the case of *Faltin* v. *State,* 17 Ariz. 278, 151 Pac. 952, 957, we said:

"No appreciable length of time is required to exist for deliberation and premeditation; the fact that the killing results from deliberation and premeditation is all that the law requires to justify a finding of murder of the first degree."

This, in substance, is the same instruction as that complained of in the present case. There is no merit in assignment of error number six.

Assignment No. 7 is that when the court gave the following instruction:

" . . . It is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer, and if such is the case the killing would be murder of the first degree, no matter how rapidly these acts follow each other, or how quickly they may have been succeeded by the act of killing."

It should have added thereto "the killing must be the result of the concurrence of the will, deliberation and premeditation." This identical instruction was before us in the case of *Macias* v. *State, supra,* on the same objection as that raised by defendant here. We considered therein the case of *People* v. *Maughs,* 149 Cal. 253, 86 Pac. 187, upon which defendant in this case strongly relies, and specifically held that the rule in Arizona was not that laid down by the Supreme Court of California in *People* v. *Maughs, supra,* but rather that set forth in *State* v. *Dong Sing,* 35 Idaho 616, 208 Pac. 860. We see no reason for de-

parting from the rule laid down in *Macias* v. *State,*
*supra.* After all, jurors must be presumed to have
at least a modicum of common sense, and we cannot
see where anyone with intelligence enough to answer
the preliminary questions asked a juror on his *voir
dire* could possibly have misunderstood the instruction
given.

Assignment No. 8 is that the court should
have instructed the jury that it was not necessary for
the defendant to take the stand in his own behalf,
and that, if he did not do so, the jury could not con-
sider that fact against him in arriving at a verdict.
No such instruction was asked during the trial of
the case. We have passed on the precise point raised
by this assignment in *Bradley* v. *State,* 35 Ariz. 420,
279 Pac. 256, and held that it is not error for the
court to fail to give such an instruction when it is
not requested.

Assignments of error Nos. 9 and 10 are
that the county attorney, in his argument to the jury,
made statements which were highly prejudicial.
There is nothing in the record to show what these al-
leged prejudicial statements of counsel were, except
the defendant's motion for new trial. In *Bradley* v.
*State, supra,* this same situation arose, and we said:

"The fourth assignment is that certain objection-
able remarks were made by the county attorney
during the course of his argument to the jury. The
only part of the record showing that the remarks
complained of were ever made is the motion for new
trial. This is not sufficient to preserve the point.
*Young Chung* v. *State,* 15 Ariz. 79, 136 Pac. 631;
*Dickson* v. *Territory,* 6 Ariz. 199, 56 Pac. 971."

Nor does it appear, even in the motion for a new
trial, that defendant objected to these remarks or
requested the court to instruct the jury to disregard
them. Such being the case, even assuming that they

were made, the general rule is that no question in regard to such remarks is reserved for review in this court. *Post* v. *State,* 41 Ariz. 23, 15 Pac. (2d) 246; *Strickland* v. *State,* 37 Ariz. 368, 294 Pac. 617; *Britt* v. *State,* 25 Ariz. 419, 218 Pac. 981. But were the remarks of the county attorney, as set forth in the motion for new trial, such as to require a reversal of the case? It is alleged (a) that he referred to the defendant, in his argument, as "nothing but a low down murderer," and (b) that he requested the jury to fix the penalty of death rather than life imprisonment, because the average prisoner sent up for life only serves on an average of eight years, and that, if the defendant received a life sentence, he would probably be paroled in eight years and thrown on society to kill and murder again. The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by these remarks. A remark somewhat similar to the one first stated was before the Supreme Court of California in the case of *People* v. *Glaze,* 139 Cal. 154, 72 Pac. 965, 967. The particular remarks on which error is predicated were as follows: "When this foul fiend from hell sent Trewella to his Maker, the motive came from a heart as black as the crime committed," and in passing upon them the Supreme Court of California held:

"The remarks in the course of the argument to the jury did not go beyond the limits of a proper argument. The district attorney was endeavoring to show that the defendant was a cold-blooded murderer. The evidence tended to show that he was guilty. If

he was guilty, he certainly deserved the denunciation complained of. A defendant, on trial for murder, is not entitled as of right to be spoken of as if he were an innocent man in an argument by the officer who is endeavoring to show that the evidence proves his guilt.''

In the case of *State* v. *Evans*, 145 Wash. 4, 258 Pac. 845, 850, the prosecuting attorney referred to the defendant as a ''murderer'' in one instance, and in another as a ''redhanded murderer.'' The Supreme Court of Washington said:

''It may be that in a case where these terms would be inappropriate to the charge against the defendant, in a case where there was no justification for their use and the attorney applied them to the defendant as mere epithets, the court would be warranted in saying that he went beyond the bounds of legitimate argument to the prejudice of the defendant. But this is not such a case. The charge was murder. The evidence on the part of the state tended very strongly to show that the appellant was guilty of the charge. . . . The conclusion that the appellant was a 'murderer' and a 'redhanded murderer' was one that could be legitimately drawn from the evidence. It is not an instance where the attorney went beyond the evidence and made statements of his beliefs and opinions unwarranted and unsupported by evidence. It is this latter sort of statements that the courts usually condemn, not those which the evidence reasonably supports.''

In the case of *Bishop* v. *Commonwealth*, 109 Ky. 558, 60 S. W. 190, 192, the Supreme Court of Kentucky used the following language:

''In arguing the case to the jury the commonwealth's attorney referred to the appellant as a murderer and an assassin. Whether he was a murderer and an assassin was the very question which was on trial, and we do not consider it improper for the district attorney, in the course of his argument, to make a statement to the jury which amounted

to nothing more or less than an expression of his opinion that defendant was guilty.''

The very issue upon which defendant was being tried was whether or not he was a murderer. The county attorney by the act of filing the information expressed his opinion that the evidence showed such to be the fact. Certainly it would be hypertechnical to say that, because the county attorney, in his efforts to convince the jury that the defendant was guilty, repeated that, in his opinion, he was guilty, this should cause a reversal of the case. In the case of *Morehead* v. *State,* 12 Okl. Cr. 62, 151 Pac. 1183, Ann. Cas. 1918C 416, cited by defendant, the remarks of the county attorney were calculated to raise race prejudice rather than to center the attention of the jury upon whether or not the defendant had committed the crime of murder. We think the remark made by the county attorney, under the circumstances in this case, is very different indeed from that held by us to be reversible error in the case of *Burrows* v. *State,* 38 Ariz. 99, 297 Pac. 1029. The other alleged objectionable argument is that the county attorney referred to the fact, so well known among all intelligent citizens that it would almost seem judicial notice might be taken thereof, that the average ''life'' sentence is terminated in a few years by a parole or a pardon, and urged as one of the reasons why such a sentence should not be assessed that the defendant would be released with an opportunity of repeating his crime. Similar arguments were made by the prosecuting attorneys in the cases of *Wechter* v. *People,* 53 Colo. 89, 124 Pac. 183; *People* v. *Rogan,* 1 Cal. (2d) 615, 36 Pac. (2d) 631, 95 A. L. R. 560; *McNeill* v. *State,* 102 Ala. 121, 15 So. 352, 48 Am. St. Rep. 17; *State* v. *Stratton,* 170 Wash. 666, 17 Pac. (2d) 621; *Frady* v. *People,* 96 Colo. 43, 40 Pac. (2d) 606, 608,

96 A. L. R. 1052, and held not to constitute reversible error. Under the law of Arizona, in first degree murder cases, the jury fixes the penalty at either death or life imprisonment, in its discretion. The statute does not prescribe what jurors shall or shall not consider in the exercise of this discretion. We think that the probability of a defendant, whose punishment has been fixed by a jury at life imprisonment, actually having to serve the penalty so fixed, is one of the questions which it is highly proper for a jury to consider in the exercise of its discretion, and as was said in the case of *Frady* v. *People, supra,* under somewhat similar circumstances:

"It was a statement of fact, known to all men, doubtless present in the minds of the jurors, without being mentioned."

We are of the opinion that the remark objected to, under the circumstances of this case, was not such error as to require reversal thereof.

■ The eleventh and last assignment of error is that the court gave the following instruction:

"The essential part of the information filed against the defendant reads as follows: Jack Sullivan is accused by the County Attorney of Cochise County, State of Arizona, by this information of the crime of murder, committed as follows: The said Jack Sullivan on or about the 13th day of March, 1935, and before the filing of this information, at the County of Cochise, did then and there wilfully, unlawfully, feloniously, premeditatedly and with malice aforethought kill and murder one John Bradberry, a human being, contrary to the form, force and effect of the statutes in such cases made and provided and against the peace and dignity of the State of Arizona. To this information the defendant entered a plea of Not Guilty. A plea of not guilty puts in issue all the material allegations of the information."

The error which it is alleged occurs therein is that, although the information contained the word "deliberately" before the word "premeditatedly," as contained in the instruction, the trial court inadvertently omitted it, and thereby gave the jury the impression that deliberation was not an essential element for them to consider in determining whether the defendant was guilty of first degree murder. The word "deliberation" is not an essential part of an information for murder of the first degree under our law. *Macias* v. *State, supra.* But, it is contended, the instruction given, in effect, told the jury it was not necessary that the evidence show deliberation either. We are of the opinion that counsel for the defendant, as in assignment of error No. 6, is attempting to object to only one part of the instruction. The court also instructed the jury as follows:

"When it appears that a defendant has committed a public offense and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of such degrees only.

"Murder is defined to be the unlawful killing of a human being with malice aforethought. Such malice is expressed or implied; it is express when there is manifested a deliberate, unlawful attempt to take away the life of a fellow creature; it is implied when no considerable provocation appears or when the circumstances show an abandoned and malignant mind.

"All murder which is perpetrated by means of poison or lying in wait, or by any other kind of wilful, deliberate or premeditated killing, or which is committed in the perpetration of, or the attempt to perpetrate rape, robbery, arson, burglary or mayhem, is murder of the first degree. All other kinds of murder are murder of the second degree. In this case it is not claimed by the state that the homicide charged in the information was committed in the perpetration of, or the attempt to perpetrate any

other felony, but it is claimed murder in the first degree, as being wilful, deliberate and premeditated.

"Murder of the second degree is the taking of a human life with malice aforethought and without deliberation and premeditation.

"In order to constitute it murder of the first degree, the unlawful killing must be accompanied by deliberate and clear intent to kill. This must be formed upon a preexisting reflection, and not upon a sudden heat of passion, sufficient to preclude the idea of deliberation. There need be no appreciable space of time between the intention to kill and the act of killing. It is only necessary that the act of killing be preceded by a concurrence of will, deliberation and premeditation on the part of the slayer, and if such is the case the killing would be murder of the first degree, no matter how rapidly these acts follow each other or how quickly they may have been succeeded by the act of killing."

We think that no juror considering all the instructions together could doubt for one minute that it was necessary that the killing be both premeditated and deliberate in order to justify a verdict of murder of the first degree.

 This concludes the various assignments of error. Notwithstanding the fact that practically each one of them has been presented to this court in one or more previous cases and has been determined adversely to the contentions of defendant in this case, in view of the gravity of the penalty, we have considered the record as a whole to determine whether, as required by article 6, section 22, of the Constitution of Arizona, substantial justice has been done. On the record, there was but one question going to the merits of the case, and that is whether the jurors were justified in inferring from the evidence before them that the defendant, at the time he fired the fatal shot, did have the deliberate and premeditated design of killing Bradberry, if it were

necessary, in order to escape search and arrest. They have, on evidence legally sufficient to sustain such a conclusion, determined in effect that he did have such an intention, nor can we say that they were not both legally and morally justified in reaching such a conclusion. And we cannot see where their opinion upon this point was probably affected in the slightest manner by any of the alleged errors committed by the trial court. Such being the case, we are of the opinion that substantial justice has been done, and the judgment of the superior court of Cochise county is affirmed.

McALISTER and ROSS, JJ., concur.