137 Ariz. 367 (1983)
670 P.2d 1192
STATE of Arizona, Appellee,
v.
Roberto SUAREZ, Appellant.
No. 1 CA-CR 5920.
Court of Appeals of Arizona, Division 1, Department A.
July 19, 1983.
Rehearing Denied August 22, 1983.
Review Denied October 12, 1983.
*369 Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., *370 and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.
Harvey R. Jackson, Lake Havasu City, for appellant.
OPINION
CONTRERAS, Judge.
Following a trial by jury, appellant was convicted of one count of fraudulent scheme and artifice in violation of A.R.S. § 13-2310. The trial court suspended imposition of sentence and placed appellant on probation for a term of five years, and as conditions of probation, ordered that appellant serve a year in the county jail and pay restitution in the amount of $6,000. He timely filed a notice of appeal and raises nine issues for our consideration:
1. Whether the indictment is void for duplicity;
2. Whether the trial court erred in denying his motion for a directed verdict of acquittal as to a portion of the indictment;
3. Whether the trial court properly instructed the jury;
4. Whether the State of Arizona had jurisdiction over the offense charged;
5. Whether the prosecutor commented on the appellant's right to remain silent at trial;
6. Whether the evidence is sufficient to support the conviction;
7. Whether appellant's right to a speedy trial was violated;
8. Whether the citing of an erroneous statute in the indictment renders the indictment void; and
9. Whether appellant received effective representation by trial counsel.
The evidence introduced at trial revealed that appellant was the finance director of Lake Havasu City until his resignation in December, 1980. His successor in office discovered irregularities in certain checks drawn on the Lake Havasu City account, and signed by appellant. She reported the irregularities to her supervisor, and an investigation ensued. The investigation revealed that a Mr. O'Leary, an employee of the Burroughs Corporation in Las Vegas, Nevada, had dealt with appellant in his capacity as finance director concerning the purchase of a computer system for Lake Havasu City. Following the installation of the computer, O'Leary told appellant he would provide the city with five free computer discs which had a value of approximately $100 each. In March or April, 1980, O'Leary brought two or three discs to Lake Havasu City with the understanding that he would bring the balance of the free discs on his next visit. When O'Leary delivered the discs to appellant, appellant proposed that he write out a city check to O'Leary for $400, and that O'Leary return half of the amount of the check, $200, to appellant personally. The city check was written to a fictitious corporation, Nevada Computer Supply or Mark O'Leary. O'Leary deposited the check in his personal checking account and gave appellant a check for half the amount. O'Leary testified that from March through September or October of 1980, he conducted anywhere from seven to ten such transactions with appellant. O'Leary estimated that he gave appellant 30 to 40 discs which resulted in a "kickback" to appellant during this time. He also testified that all but one of the exchanges occurred in Arizona. The state introduced into evidence checks representing five of the transactions between O'Leary and appellant.
The evidence produced at trial also revealed that appellant was engaged in somewhat similar conduct with another employee of Burroughs Corporation, Lawrence Tapper. Tapper was a programmer for Burroughs, and was engaged in "moonlighting" activities from time to time. If a party needed a computer program changed, Tapper would, upon occasion, change the program during his spare time and charge the party personally for his work. Tapper testified that moonlighting activities were *371 against company rules at Burroughs. He stated that at the end of 1979, Lake Havasu City purchased a new system from Burroughs, and at that point, Tapper did his work and his dealings with appellant primarily in Las Vegas. Appellant told Tapper that the city would not authorize his (appellant's) expenses to come to Las Vegas, and proposed a plan with Tapper to cover his expenses. Pursuant to this plan, appellant would pay Tapper for his moonlighting by check issued on the city account, and Tapper would reimburse appellant for half the amount of the check. Tapper testified that appellant's proposal occurred either at the end of 1979 or the beginning of 1980.
The evidence also disclosed that in approximately September, 1980, Tapper started selling discs to appellant. He testified that the majority of the discs were ones which he had picked up from other customers who had Burroughs equipment and no longer needed the discs. Tapper would service the discs and resell them. In September, appellant called Tapper and indicated that he needed some discs, and that he needed to purchase them for $82.50. Appellant had been buying discs from O'Leary for $80 per disc. He indicated to Tapper that he wanted to buy the discs at the same price and he added $2.50 to indicate an appearance of sales tax. Tapper estimated that he sold appellant 50 discs. Appellant paid for the discs with checks drawn on the Lake Havasu City account. The checks, for the most part, were made payable to Nevada Computer Supply or Larry Tapper, although Tapper did have appellant make out three checks to another party. Tapper would cash the checks and give half of the face value of the check back to appellant. Tapper also testified that he gave to appellant half of the value of the moonlighting checks.
Both O'Leary and appellant's replacement as finance director in Lake Havasu City testified that the city had procured many more discs than were needed by the city.
Based on the evidence presented, the jury found appellant guilty of fraudulent scheme and artifice.
DUPLICITOUS INDICTMENT
For his first issue on appeal, appellant asserts that the indictment is void for duplicity. He contends that the state charged 24 separate offenses in one count.
Appellant was charged by indictment as follows:
On or about January 1, 1980 through January 1, 1981, at 1795 Civic Center Blvd., Lake Havasu City, Mohave County, Arizona, the defendant, ROBERTO SUAREZ, pursuant to a scheme or artifice to defraud, knowingly obtained a benefit to wit: approximately $6000 by means of false pretenses, representations, promises or material omission, all in violation of A.R.S. §§ 13-701, 13-801, 13-2301 and 13-2310.
At no time prior to trial did appellant file a motion to dismiss the indictment on grounds of duplicity or for any other reason.
Appellant asserts that pretrial discovery revealed 24 transactions between appellant and O'Leary or Tapper. He argues, therefore, that the indictment included in one count 24 distinct and separate offenses. He also argues that he was prejudiced because the state introduced evidence on only five of the transactions to prove a scheme consisting of 24 incidents.
A.R.S. § 13-2310(A) provides:
Any person who, pursuant to a scheme or artifice to defraud, knowingly obtains any benefit by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of a class 2 felony.
Appellant cites State v. Kuhnley, 74 Ariz. 10, 242 P.2d 813 (1952) in support of his proposition that an information or indictment which charges two or more distinct and separate offenses in one count is void *372 for duplicity. As a general proposition of law, appellant's assertion is correct. However, State v. Kuhnley and the other cases relied upon by appellant are distinguishable from the instant case by virtue of the nature of the offense charged. In State v. Kuhnley, the defendant was charged with one count of receiving stolen property. The indictment alleged six specific items of stolen personal property received. The supreme court pointed out that there was no evidence that two of the articles were received by the defendant at the same time, but that the thefts occurred at various times, and that the stolen item was delivered to the defendant at his home immediately after the theft. The supreme court held that there was a fatal variance between the information and the proof in that case because the trial court treated the separate offenses as one offense and instructed the jury that the elements of the crime were established if the jury found the defendant guilty of receiving any or all of the articles enumerated in the information.
In the present case, however, appellant was charged with fraudulent schemes and artifices. "A `scheme or artifice to defraud' consists of forming a plan or devising some trick to perpetrate a fraud upon another." State v. Smith, 121 Ariz. 106, 588 P.2d 848 (App. 1978). A scheme to defraud thus implies a plan, and numerous acts may be committed in furtherance of that plan. In this case, it is apparent that appellant had a plan to defraud Lake Havasu City. His plan was manifested in a course of conduct involving numerous transactions between appellant and O'Leary or Tapper. It is also apparent that appellant did not formulate 24 separate schemes to defraud, but rather, formulated one scheme to defraud and implemented the scheme through the subsequent series of transactions. A charge of fraudulent schemes and artifices is, therefore, distinguishable from a charge of receiving stolen property precisely because "scheme" implies a plan in furtherance of which numerous acts may be committed. "The words of [a] statute should be given their plain and ordinary meaning, unless it appears from the context that a different meaning should control." State v. Fendler, 127 Ariz. 464, 473, 622 P.2d 23, 32 (App. 1980). We conclude that the indictment charging fraudulent schemes and artifices is not void for duplicity.
DIRECTED VERDICT
For his next issue on appeal, appellant argues that the trial court erred in failing to grant his motion for a directed verdict of acquittal at the close of the state's case. He contends that since the state proved only 5/24ths of the indictment, he was convicted of only 5/24ths of a count. He argues that the state did not prove each element of the offense beyond a reasonable doubt. This argument has no merit.
Appellant appears to be arguing that because the state disclosed 24 separate incidents in its pretrial disclosure, it was required to present proof of each of the 24 incidents in order to prove appellant guilty of fraudulent schemes and artifices beyond a reasonable doubt. However, there is no existing authority for the proposition that the state must present proof of every item indicated in its pretrial disclosure.
In this case the state was required to prove that appellant, pursuant to a scheme or artifice to defraud, knowingly obtained a benefit by means of a false or fraudulent pretense, representation, promise or material omission. To that end, the state presented proof through the testimony of O'Leary and Tapper that appellant, during 1980, obtained the money from the city by purchasing discs and services with checks written on the Lake Havasu City account made out to a fictitious corporation and then received a "kickback" from O'Leary and Tapper. In order to prove fraudulent schemes and artifices, the state presented the testimony of O'Leary and Tapper as to the general course of fraudulent conduct between themselves and appellant during the year 1980. The state also introduced documentary *373 evidence of five specific transactions. The state also introduced testimony that city checks in the amount of $12,069 had been written by appellant on the Lake Havasu City account pursuant to the scheme. Appellant seems to assert that only the documentary evidence was sufficient to establish proof beyond a reasonable doubt; however, the testimonial evidence was certainly as probative as the documentary evidence. As a matter of strategy, the state chose not to present proof of every single transaction committed between appellant and Tapper or O'Leary. A.R.S. § 13-2310 defining fraudulent schemes and artifices does not require that the state prove every transaction which is part of the scheme or artifice. We find, therefore, that the trial court did not err in denying appellant's motion for a directed verdict of acquittal.
JURY INSTRUCTIONS
Appellant next argues that the trial court erred in failing to instruct the jury that the state was required to prove either the entire indictment alleging a fraud in the amount of $6,000 or 24 separate transactions. Appellant did not request such an instruction, and has therefore waived error for purposes of appeal in the absence of fundamental error. State v. Evans, 125 Ariz. 140, 608 P.2d 77 (App. 1980).
The trial court instructed the jury with regard to fraudulent schemes and artifices as follows:
The crime of fraudulent schemes and artifices has four elements. In order to find that the defendant committed the crime of fraudulent schemes and artifices, you must find that: (1) the defendant obtained some benefit; and (2) the defendant must do so knowingly; and (3) the defendant must do so by means of false or fraudulent pretenses, representations, promises or material omissions; (4) the defendant must do so pursuant to a scheme or artifice to defraud.
Appellant's apparent contention is two-fold: (1) that because the state presented proof of only 5 of 24 possible fraudulent transactions between appellant, Tapper, and O'Leary, and because the state presented proof of some transactions that were not fraudulent, the state did not prove the indictment. The second portion of his contention is apparently because the state alleged a $6,000 benefit to the appellant in the indictment, the state was required to prove separate transactions amounting to a $6,000 benefit. Therefore, he contends he was entitled to have the jury instructed that the state had to prove each element of fraudulent scheme and artifice as to each incident.
Our discussions of the previous two issues indicate our conclusion that a scheme inherently involves a plan pursuant to which there may be many transactions. The elements of fraudulent schemes and artifices have been discussed above. The trial court properly instructed the jury as to those elements. The language in the indictment alleging a $6,000 benefit flowing to defendant-appellant pursuant to the scheme and artifice was surplusage inasmuch as the dollar value of the benefit obtained pursuant to a fraudulent scheme or artifice is irrelevant for purposes of determining whether a fraudulent scheme or artifice has occurred. A.R.S. § 13-2310(A). All that is required is that the defendant obtain "any benefit". The trial court instructed the jury that "`benefit' means anything of value or advantage." The trial court also correctly instructed the jury "proof of the offense of fraudulent schemes and artifices does not require a showing that the benefit obtained by the defendant was of a certain value or was greater than a certain value."
Although the state did not present documentary evidence to prove that appellant had received a benefit of $6,000, it presented testimonial evidence to the effect that appellant had written checks in the amount of $12,069, and testimonial evidence that appellant received half of the value of the checks he wrote as a "kick-back". Thus, there was testimonial evidence tending to establish that appellant had received *374 a benefit of $6,000 as alleged in the indictment. Moreover, the charging document is automatically amended to conform to the evidence produced at trial. Rule 13.5(b), Rules of Criminal Procedure, 17 A.R.S. In this case, the jury was properly instructed concerning the elements of fraudulent scheme and artifice, and the state presented evidence establishing those elements. The state was not required to prove by the introduction of documentary evidence every single transaction committed by appellant in furtherance of the fraudulent scheme and artifice; nor was appellant entitled to an instruction to the effect that the state's failure to prove by documentary evidence each specific transaction resulted in a failure of proof of the offense charged. We find no error in the instructions given.
JURISDICTION
For his next issue on appeal, appellant contends that Arizona lacked jurisdiction to prosecute him as to the incidents involving Tapper because, he alleges, most of the Tapper transactions occurred entirely in Nevada. He concludes that the trial court should have directed a verdict on the portion of the count relating to the Tapper incidents, and that "since it is impossible to convict on less than 100% of a charge, [appellant] should have received a directed verdict."
If conduct constituting any element of the offense or a result of that conduct occurs within the state, Arizona has jurisdiction over the offense. A.R.S. § 13-108(A)(1). The question is whether "any element of the offense" occurred in Arizona. State v. Bussdieker, 127 Ariz. 339, 621 P.2d 26 (1980).
It is apparent that one or more elements of the instant offense were committed in Arizona. All but one of the O'Leary transactions occurred in Arizona. As to the Tapper incidents, the evidence reveals that while the actual exchange of money occurred in Nevada in all but one of the incidents, the evidence also reveals that appellant phoned Tapper numerous times, ostensibly from appellant's office telephone in Lake Havasu City. The evidence also reveals that appellant paid Tapper with checks drawn on the Lake Havasu bank account located in Arizona. It is apparent that the scheme was planned by appellant in Arizona, and that appellant knowingly formulated the scheme in Arizona. The state also established that appellant deposited checks from O'Leary to him in his account in Arizona. Therefore, while several of the transactions with Tapper may have been executed in Las Vegas, numerous elements of the offense were committed in Arizona, and Arizona had jurisdiction to try the offense. State v. Bussdieker.
PROSECUTORIAL MISCONDUCT
For his next issue, appellant asserts that the prosecutor, in closing argument, improperly commented on his right not to present a case on behalf of the defense and his right not to testify. Appellant contends that error occurred in the following statements:
Ladies and gentlemen, it is insurmountable. You look at the data up there, look at the transactions. Ask yourselves how would he disprove it if, in fact, he did it, and the figures make it very clear; the fact is it's an impossible thing to do. He cannot disprove it because in fact the defendant did what he's charged with having done.
Appellant's counsel argued in several places during his closing argument that the crime with which he was accused was incapable of being disproved. He argued that the defendant did not take kick-backs, that he told the arresting officer that he did not take kick-backs, but that he could not prove "something that didn't exist". In other words, he could not prove "negative evidence." The above referenced comment was a proper response to appellant's argument that he could not disprove the crime charged. The prosecutor was referring to *375 an evidentiary chart detailing the transactions between appellant, O'Leary, and Tapper, and pointing to the evidence stating simply in response to appellant's argument that the evidence showed that appellant did what he was charged with having done. This comment thus did not constitute a comment on appellant's right to remain silent or to present no evidence, but a clear comment in response to appellant's closing argument.
Similarly, one of the arguments made by appellant's counsel was that appellant was not so stupid as to commit the offense with which he was charged. In response to this argument, the prosecutor stated:
After a prosecutor has tried a few cases  and I'm not suggesting that I'm the most experienced prosecutor in the world  but after you've tried a few cases, you tend to almost cringe when you hear defense attorneys making the same argument over and over again. I'm sure that every time they make it they think it's an original argument. I'm almost getting sick of hearing defense attorneys stand up and say how could my client be so stupid as to do what he's charged with doing.
This comment by the prosecutor does not constitute a comment either directly or inferentially on appellant's right to remain silent. We also note that the comment was invited by defense counsel's closing argument. We find no error. See State v. Bowie, 119 Ariz. 336, 580 P.2d 1190 (1978).
Appellant also argued that the state failed to subpoena numerous witnesses that it could have subpoenaed and that the state had awesome subpoena power as compared to the defendant. Specifically, appellant's counsel argued that the state should have subpoenaed two city officials, Mr. Klotzbach and Mr. Smith. Appellant argued that the state failed to subpoena the testimony of the persons from whom Tapper, specifically, acquired the discs. Appellant also argued that the state failed to subpoena Dave Larson, the Burroughs supervisor of both O'Leary and Tapper. In the context of all of these arguments, appellant argued that the state failed to prove its case. In response to this argument, the prosecutor stated:
If there are people here that I did not subpoena, you can assume that, for whatever reasons, I felt that I did not need their testimony. If Mr. Jackson failed to subpoena those same people  and he's a competent attorney  you can certainly be sure that he did not subpoena those people for the same reason: because they have absolutely no light to shed upon this case.
* * * * * *
Any evidence which existed in this case was certainly subject to a subpoena and, in fact, I think its been very obvious to you during the proceedings that Mr. Jackson has had complete access to anything that was in our files. If he had wanted to have it marked, wanted to have it introduced in evidence, he could have done so.
He chose not to do so, and being a competent attorney, you can assume that he didn't do that either because it would have damaged his client or at least that it would not have helped his case to any extent.
The prosecutor did not mention appellant's failure to subpoena the witnesses in his initial closing argument, but only in rebuttal argument in response to the defense attorney's remarks. In State v. Filipov, 118 Ariz. 319, 324, 576 P.2d 507, 512 (App. 1977), we wrote:
We believe that the state or the defense may properly comment upon the failure of the other party to produce a witness in appropriate circumstances. Such circumstances exist when the witness not produced allegedly would give testimony favorable to the party who fails to call the witness.
On the basis of the record before us, it is apparent that appellant's counsel *376 properly commented upon the failure of the state to produce witnesses and evidence which would be favorable to the state. Presumably, Klotzbach, Smith, Larson, and Lowell would have corroborated the testimony of the state's witnesses. Therefore, appellant's argument commenting on the state's failure to produce those witnesses was a proper argument on the state's failure to prove its case. Consequently, the prosecutor's rebuttal argument was not invited by error of appellant's counsel; nor did it constitute a proper comment on appellant's failure to call a witness within his control because the testimony of those witnesses would not apparently assist the defense. Thus, the state's argument was error.
Nevertheless, we must determine whether the error was prejudicial. In Sullivan v. State, 47 Ariz. 224, 55 P.2d 312 (1936), the supreme court set forth the criteria for determining if improper argument is unduly prejudicial:
The best rule for determining whether remarks made by counsel in criminal cases are so objectionable as to cause a reversal of the case is, Do the remarks call to the attention of the jurors matters which they would not be justified in considering in determining their verdict, and were they, under the circumstances of the particular case, probably influenced by those remarks.
47 Ariz. at 238, 55 P.2d at 317. See also State v. Filipov. We believe that under the circumstances of this case, the jurors were probably not influenced by the remarks of the prosecutor in his rebuttal argument. Although appellant argues to the contrary, the proof in this case was overwhelming. The state presented the testimony both of Tapper and O'Leary that appellant wrote each of them checks on the Lake Havasu City account, and they each paid him personally half the face value of the checks. The state introduced the testimony of appellant's successor in office to the effect that she had discovered the checks and believed them to be irregular. The parties stipulated that appellant deposited checks written from O'Leary to him in his personal bank account. Given the overwhelming proof against appellant, we find that the jury was probably not influenced by the improper remarks of the prosecutor.
Appellant also contends that the prosecutor improperly commented on the state's burden of proof by asserting that he was not required to prove the indictment, but was required to prove the crime of fraudulent schemes and artifices. In context, those comments by the prosecutor were not error. We have already held that the $6,000 figure in the indictment was surplusage, that the state was not required to prove every single transaction which formed the basis of the fraudulent schemes and artifices count, and that appellant was not entitled to an instruction to the effect that the state must prove every transaction which formed the basis of the count. The prosecutor's argument was not error.
Appellant also contends the prosecutor erred in making the following argument:
Why do you suppose Mr. Jackson feels that the only way he can defend this client is to strike out at everybody involved in this case? To talk about the, I believe it was the crude O'Leary and Tapper? To engage in this smear campaign with Dixie Williams? I won't even mention the smear campaign with the people who weren't ever here.
This argument was clearly in response to appellant's closing argument. Appellant's counsel had characterized O'Leary and Tapper as crude, and implied that Dixie Williams, appellant's successor in office, was motivated by her desire to take over appellant's job. The prosecutor's argument in this regard was therefore invited by appellant's argument.
Appellant also contends that the prosecutor commented on his right to remain silent when the prosecutor stated:

*377 You have an unsworn statement by the defendant out in California somewhere to the investigating officer in this case that he didn't do anything.
This comment did not constitute a comment on appellant's right to remain silent. When appellant was arrested, he spoke to the arresting officers and did deny the charge. Therefore, the comment constituted a proper comment on something appellant had stated, and not on appellant's right to remain silent.
Therefore, taken as a whole, we find that the prosecutor's argument did not improperly influence the jury.
SUFFICIENCY OF THE EVIDENCE
Appellant also contends that the evidence was insufficient to support the jury verdict. He asserts that O'Leary and Tapper both testified that they were not acting in concert with each other, but that their dealings with Suarez were separate and apart from each other. He also argues that Lake Havasu City was not defrauded because the city paid less for the discs than it would have paid had they been sold at their fair market value of $110 per disc.
While it is clear that Tapper and O'Leary did not act in concert with each other, and each acted separately with appellant, it is not necessary, in order to show fraudulent schemes and artifices that all parties to the scheme must act in concert. A.R.S. § 13-2310(A), defining fraudulent schemes and artifices refers only to the intent and actions of the person who obtains a benefit by means of the fraudulent scheme or artifice. Presumably a person could formulate a fraudulent scheme and artifice, and pursuant thereto involve numerous innocent people in furtherance of the scheme, none of whom knew about the involvement of any other innocent party. It is the formulation of the scheme by the person alleged to have committed the offense which is required by the statute. In this case, it is evident that appellant formulated the scheme to obtain money from Lake Havasu City, and independently approached Tapper and O'Leary on separate occasions suggesting the scheme. While it is clear that Tapper and O'Leary may have had an idea that the other party was participating in a scheme with appellant, nothing in the statute requires that they act in concert.
Appellant's argument that the evidence is insufficient to support the verdict because the city paid less for the discs than their fair market value is ludicrous. If this logic was followed, it would constitute an open invitation for public officials to defraud the people whom they serve under the guise of saving them money. This is not the law. A.R.S. § 13-2310(A) requires simply that the party allegedly committing the fraudulent scheme and artifice obtain a benefit by means of a false or fraudulent pretense, representation, promise or material omission. In this case, appellant obtained money from the city to which he was not entitled by writing checks on the city's bank account for purchases of discs the city did not need. The representation on the face of the checks was clearly that the sales price of the discs was $80 per disc when, in fact, both Tapper and O'Leary were selling the discs for $40, and giving appellant $40. Moreover, O'Leary had intended to give the city the first five discs at no cost to the city. Nevertheless, the city paid $400 for the discs, $200 to O'Leary and $200 to appellant. It is utterly irrelevant that the city paid less for the discs than the market price.
SPEEDY TRIAL
For his seventh issue, appellant contends that his right to a speedy trial was violated because the last continuance violated his right to a speedy trial.
Appellant was arraigned May 15, 1981. Trial date was set for July 28, 1981, and the trial setting was continued by the court to August 19, 1981 due to a conflict in the trial court's calendar. The state moved for a *378 continuance due to a conflict in its calendar, and trial was set for September 9, 1981. The trial setting of September 9, 1981 was continued to October 7, 1981 by stipulation of the parties. The state then moved for a continuance on the grounds that the investigating officer would be out of the state and was unavailable to be served with a subpoena until October 19, 1981. Counsel argued the motion October 6, 1981, but the transcription of that argument was not made part of the record for purposes of this appeal. The minute entry following the argument indicates that the trial court granted the motion and continued the trial to November 3, 1981 at 9:30 a.m. The minute entry also indicates as follows: "if any party feels the state violates any trial limits, the Court will entertain a motion to accelerate the trial on the calendar." Appellant did not file or argue a motion to accelerate the trial on the calendar. Appellant opposed the state's motion to continue on the grounds that the unavailability of the investigating officer was not an extraordinary circumstance requiring delay.
Since we do not have a copy of the transcript of the argument concerning the state's last motion for a continuance, we must presume that the record would support the action of the trial court. We must thus conclude that the state made a showing that extraordinary circumstances existed and that delay was indispensable to the interests of justice in accordance with the provisions of Rule 8.5(b), Rules of Criminal Procedure, 17 A.R.S. Appellant was required to be tried within 90 days from the date of his arraignment pursuant to Rule 8.2(c). He was arraigned on May 15, 1981, and was thus required to be tried August 13, 1981, in the absence of Rule 8.4 excluded time periods. Rule 8.4(c) excludes from the computation of time limits delays necessitated by congestion of the trial calendar, "when the congestion is attributable to extraordinary circumstances, in which case the presiding judge shall promptly apply to the Chief Justice of the Arizona Supreme Court for suspension of any of the Rules of Criminal Procedure." In the instant case, the first trial setting was continued by the court due to the conflict in the court's calendar. Because the record is silent concerning whether the trial court complied with the provisions of Rule 8.4(c), we must conclude that the trial court's action was proper. Therefore, the first continuance of 22 days was properly excluded pursuant to Rule 8.4. Appellant concedes that the stipulated 30 day continuance was properly excluded pursuant to Rule 8.4. The state's first motion to continue, to which appellant did not object, was granted upon a finding of good cause pursuant to Rule 8.5(b) for 21 days. This time was properly excluded pursuant to Rule 8.4(d). We have already found that in the absence of a record indicating that the trial court abused its discretion in granting the state's last motion to continue, that the motion was properly granted pursuant to Rule 8.5(b), and that 27 days were excluded pursuant to Rule 8.4(d). Therefore, the date for trial was extended pursuant to Rule 8.4 by 100 days of excluded time. Appellant's trial commenced November 3, 1981, which was 80 days from August 13, 1981. We find that appellant's right to a speedy trial pursuant to Rule 8 was not violated.
STATUTE CITED IN INDICTMENT
The indictment in this case alleged violations of A.R.S. §§ 13-701, 13-801, 13-2301 and 13-2310. A.R.S. § 13-2301 is a definitional section, but no part of A.R.S. § 13-2301 applies to A.R.S. § 13-2310. Therefore, A.R.S. § 13-2301 was not properly alleged in the indictment. Appellant argues that the indictment was therefore void.
He contends further that any definitions pertaining to A.R.S. § 13-2310 would necessarily come from prior cases or other rules of statutory construction. He argues that the predecessors to A.R.S. § 13-2301, which were A.R.S. §§ 320.01, 312, and 661 require that there must be a victim who is defrauded *379 in order to prove fraudulent scheme or artifice. We have already concluded that the city was defrauded in this case, because it paid $400 for five discs, which would otherwise have been free, and paid $80 each for discs for which half the sales price was returned to appellant.
Although, given the issues raised on appeal, it is apparent that the indictment was drawn inartfully in this case, we find that appellant has neither alleged nor shown how he was prejudiced by the inclusion of the reference to A.R.S. § 13-2301 in the indictment. The reference to the statute was mere surplusage in the indictment, was not objected to by appellant at trial, and the indictment was thus deemed to be amended to conform to the proof. Rule 13.5(b), Rules of Criminal Procedure, 17 A.R.S. It is clear that the reference to A.R.S. § 13-2301 was merely a technical defect in the indictment because it did not change either the nature of the offense charged nor did it prejudice appellant in any way. State v. Bruce, 125 Ariz. 421, 610 P.2d 55 (1980). Any issue concerning a defect in the charging document must be raised by motion filed in accordance with Rule 16.1, no later than 20 days prior to trial. Rule 13.5(c); State v. Sustaita, 119 Ariz. 583, 583 P.2d 239 (1978). Appellant did not timely raise the issue prior to trial. We find that he is precluded from raising the issue on appeal and even if by stretch of the judicial imagination he is not precluded, there is no merit to his argument on the issue.
EFFECTIVE ASSISTANCE OF COUNSEL
Counsel on appeal asserts that if he was in error at trial on the issue concerning duplicity of the indictment, then he was ineffective as counsel. For the following reasons, we decline to consider the ineffective assistance of counsel argument presented in this appeal.
Since State v. Watson, 134 Ariz. 1, 653 P.2d 351 (1982), the standard for effective assistance of counsel in Arizona has been whether counsel showed at least minimal competence in representing the criminal defendant. In making this determination, the reviewing court should focus on "the quality of counsel's performance, rather than on the effect of that performance on the outcome of the proceeding." Id. at 4, 653 P.2d at 354. Furthermore, as noted in both State v. Watson and State v. Thomas, 133 Ariz. 533, 652 P.2d 1380 (1982), disagreements as to trial strategy or errors in trial tactics will not support an ineffectiveness claim, as long as the challenged conduct could have had some reasoned basis. State v. Watson. As noted in State v. McDaniel, 136 Ariz. 188, 665 P.2d 70, 80 (1983), "proof of ineffectiveness must be a demonstrable reality rather than a matter of speculation."
The burden of establishing ineffectiveness of trial counsel is on the defendant. State v. Tison, 129 Ariz. 546, 633 P.2d 355 (1981). Procedurally, such issue can be presented either on direct appeal or in a collateral proceeding pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. However, if this issue is presented on appeal, it is improper for appellate counsel to argue his own ineffectiveness at trial because, as a matter of policy, it is difficult for counsel to objectively review his own performance and zealously argue any inadequacies in that performance on behalf of his client. In addition, one can easily perceive the potential for abuse if appellate counsel is permitted to raise, evaluate and advocate his ineffectiveness as trial counsel. If counsel honestly believes he was ineffective at trial or that such issue exists, he should so advise his client, seek leave to withdraw and have new counsel appointed to raise the issue on appeal, or pursue the matter under Rule 32, Arizona Rules of Criminal Procedure.
In this appeal and for the reasons stated, we decline to consider the issue of ineffective assistance of counsel on appeal. This determination is without prejudice to appellant *380 presenting the issue to the trial court through the medium of a Rule 32 proceeding by counsel other than his present counsel.
The conviction and judgment are affirmed.
CORCORAN and KLEINSCHMIDT, JJ., concur.