NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL DUANE MULLET, *Appellant.*

No. 1 CA-CR 17-0179
FILED 6-14-2018

Appeal from the Superior Court in Maricopa County
No.  CR2016-002063-001
The Honorable Warren J. Granville, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Nicholas Klingerman, Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kevin D. Heade
*Counsel for Appellant*

Piccarreta Davis Keenan Fidel P.C., Tucson
By Jefferson Keenan
*Co-Counsel for Amicus Curiae, Arizona Attorneys for Criminal Justice*

Pima County Public Defender's Office, Tucson
By David J. Euchner
*Co-Counsel for Amicus Curiae, Arizona Attorneys for Criminal Justice*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge James P. Beene joined.

---

**C A M P B E L L**, Judge:

¶1        Michael Duane Mullet appeals his convictions and sentences for 35 counts of fraudulent schemes and artifices and one count of theft. He argues the fraud convictions should be reversed because the fraudulent schemes and artifices statute criminalizes the "aggregate of benefits pursuant to the same scheme" and the State presented evidence of, at most, only one scheme. Mullet also challenges the sufficiency of evidence supporting his fraud convictions and contends the trial court improperly precluded him from cross-examining a State's witness about the witness's prior felony convictions. Finally, Mullet argues the trial court erred in denying his requested supplemental jury instruction, and he raises a prosecutorial misconduct claim. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND[1]

¶2        A Homeowner discovered a water leak under his driveway and called Lawson Family Plumbing ("Lawson") to request a service technician. Because Homeowner had recently depleted his savings, he asked the Lawson dispatcher whether he could pay for plumbing services with a credit card. The representative assured him that Lawson accepted credit cards.

¶3        Mullet was the Lawson service technician who responded to the home. After completing the repairs, Mullet informed Homeowner that Lawson's credit card "machine" was inoperable, and he would have to issue a check payable to Mullet personally. Unable to pay by check,

---

[1] We view the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Mullet. *See State v. Valencia*, 186 Ariz. 493, 495 (App. 1996).

2

Homeowner called Lawson directly to relay his credit card information so the company could charge the card to pay for the plumbing work. The Lawson representative who responded to Homeowner's call was "confused" because "she had a hard time finding the job" Mullet had completed at his location. J.L., Lawson's founder and president, immediately investigated and learned Mullet had been receiving checks from numerous Lawson customers payable to himself for plumbing work Mullet performed on behalf of the company.[2] The following day, J.L. contacted police and terminated Mullet's employment with Lawson.

¶4             J.L. subsequently determined that Mullet exploited a loophole in the company's computer invoicing system whereby Mullet would e-mail the customer an invoice from a company-supplied tablet stating the amount the customer paid Mullet by check, but the electronic invoice copy that the company received would either show no work was done (indicating Mullet only furnished the customer with a free estimate but did not perform any work) or the invoice would show an amount paid that was less than the customer actually paid Mullet. Mullet would then deposit the funds into his personal bank accounts. Mullet sent J.L. a letter and then a separate e-mail expressing remorse. In the email he offered to repay Lawson "to mak[e] all issues right." Mullet never repaid the company.

¶5             After a police investigation, the State charged Mullet with 43 counts of fraudulent schemes and artifices and one count of theft. Each fraud count alleged a date of offense relating to a check a Lawson customer had issued to Mullet. The theft count alleged a loss of property with a value between four and twenty-five thousand dollars. J.L. dba Lawson Family Plumbing was the alleged victim in all counts.

¶6             For eight of the fraud counts, the trial court entered a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20(a). The jury found Defendant guilty of all remaining counts. For 20 of the fraud convictions, the court imposed presumptive 9.25-year prison terms and, for the remaining 15 fraud counts, 10-year prison terms. The court

_____

[2] Lawson required its service technicians to collect customers' checks made payable only to the company. Every Friday, the technicians would turn over the checks and cash to the company, and the company would pay each technician a commission based on the total amount of customer payments the technician collected that week. Furthermore, each technician, including Mullet, signed an "Associate Agreement" with the company that, among other things, prohibited the technician from soliciting Lawson's customers during his or her employment.

imposed a 6.5-year prison term for the theft conviction and ordered all prison terms be served concurrently.

## DISCUSSION

### I.    Unit of Prosecution for Fraudulent Schemes and Artifices

¶7          Mullet argues that the plain language of the fraudulent schemes and artifices statute evinces a legislative intent to criminalize the "aggregate of benefits" a suspect obtains pursuant to the same scheme. Relying on *State v. Suarez*, 137 Ariz. 368 (App. 1983), Mullet notes that the scheme to defraud is the criminal conduct under Arizona Revised Statutes ("A.R.S.") § 13-2310, not the acts committed in furtherance of the scheme. Consequently, Mullet contends he was properly subject to only one count of fraud based on his scheme to defraud the Lawson company and that collecting customer checks made out to him personally were mere acts that effectuated the scheme. According to Mullet, the indictment was therefore multiplicitous. *See State v. Powers*, 200 Ariz. 123, 125, ¶ 5 (App. 2001) ("Multiplicity occurs when an indictment charges a single offense in multiple counts . . . rais[ing] the potential for multiple punishments, which implicates double jeopardy.").

¶8          Although Mullet did not raise this argument at trial, we nonetheless address it de novo because it implicates Mullet's double jeopardy rights, and a violation of the Double Jeopardy Clause constitutes fundamental error. *State v. McGill*, 213 Ariz. 147, 153, ¶ 21 (2006); *Powers*, 200 Ariz. at 125, ¶ 5. We also review issues of statutory interpretation de novo. *State v. Peek*, 219 Ariz. 182, 183, ¶ 6 (2008). To determine a statute's meaning, we look first to its text. *State v. Holle*, 240 Ariz. 300, 302, ¶ 11 (2016). When the text is clear and unambiguous, we apply the plain meaning and our inquiry ends. *Id.* at 302, ¶ 11. "[T]he words of a statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *State v. Miller*, 100 Ariz. 288, 296 (1966).

¶9          The fraudulent schemes and artifices statute, in relevant part, states: "Any person who, pursuant to a scheme or artifice to defraud, *knowingly obtains any benefit* by means of false or fraudulent pretenses, representations, promises or material omissions is guilty of [committing fraudulent schemes and artifices]." A.R.S. § 13-2310(A) (emphasis added). Generally, "if multiple violations of the same statute are based on the same conduct, there can be only one conviction if there is a single offense." *State v. Jurden*, 239 Ariz. 526, 529, ¶ 11 (2016). "In such cases, the statutory definition of the crime determines the scope of conduct for which a discrete

charge can be brought, which the United States Supreme Court has referred to as the 'allowable unit of prosecution.'" *Id.* (quoting *U.S. v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)).

¶10      Mullet's argument, similar to the argument raised by amicus curiae Arizona Attorneys for Criminal Justice ("AACJ"), improperly focuses on the overarching scheme to steal the company's money and suggests that should be the "unit of prosecution" for charging purposes. Mullett and the AACJ attempt to use the word "scheme" in accordance with one of its common definitions—"a plan or program of action." *Merriam-Webster's Collegiate Dictionary* 1110 (11th ed. 2014). To be sure, Mullet engaged in such a scheme, but the ongoing conduct was not the "scheme" contemplated by the legislature in A.R.S. § 13-2310 to be used as the unit of prosecution. Rather, as we explain, the legislature intended the requirement of "knowingly obtains any benefit" to be the unit of prosecution for charging purposes.

¶11      Even if the existence of a scheme was the intended unit of prosecution, that scheme was complete each time Mullet requested and received a check—"any benefit"—from a Lawson customer payable to him personally with the intent to defraud the company from the financial benefit of the service provided. The transaction with each such customer took place on a date distinct from the other transactions, and each such transaction was a separate scheme that consisted of a series of acts, such as (1) Mullet's successful request to the customer that a check be made out to him, (sometimes by falsely stating that paying by credit card was not possible), (2) Mullet depositing the check funds into his personal bank accounts, and (3) his manipulation of Lawson's invoicing system to hide the fact that he received payment for work he performed on behalf of Lawson. Although the individual acts in furtherance of each scheme may not have been properly chargeable as separate frauds, those acts comprised the total fraudulent transaction or scheme that Mullet engaged in numerous times with different customers. *See Suarez*, 137 Ariz. at 373 ("A scheme to defraud . . . implies a plan, and numerous acts may be committed in furtherance of that plan."); *cf. State v. Johnson*, 179 Ariz. 375, 380 (1994) (noting employee entrusted with key to display case first using key to embezzle jewels and then lying to employer would not be fraud; the fraud statute "requires a false pretense to be the *means by which the benefit is obtained*, not the means to avoid detection"). Because the scheme relating to each separate fraud count required proof that the other counts did not, the fraud counts were not multiplicitous. *Merlina v. Jejna*, 208 Ariz. 1, 4, ¶ 12 (App. 2004) ("Offenses are not the same, and therefore not multiplicitous, if each requires proof of a fact that the other does not.").

¶12        Although A.R.S. § 13-2310 contemplates the existence of a scheme or artifice to defraud, we conclude that "knowingly obtains any benefit" is the intended unit of prosecution as illustrated by the facts of this case. Significantly, the mens rea of "knowingly" clearly refers to "obtain[ing] any benefit." The statute plainly refers to "knowingly obtains any benefit," not the "aggregate of benefits" as proposed by Mullet. As such, we reject Mullet's argument that the legislature intended multiple similar schemes, perpetuated on different dates, against one victim should properly subject the perpetrator to only one count of fraudulent schemes and artifices.

¶13        We note that had Mullet engaged in only one fraudulent transaction with a Lawson customer, charging him with one count of fraudulent schemes and artifices would have been proper. Mullet does not argue otherwise. It logically follows that when Mullet engaged in subsequent independent fraudulent transactions, each one would be properly chargeable as a discrete offense of fraudulent schemes and artifices. After all, each time Mullet fraudulently received a check payable to him, he caused Lawson additional harm and received a benefit to which he was not entitled. Construing A.R.S. § 13-2310 in the fashion Mullet proposes would lead to an absurd result: a defendant who commits a fraudulent act would be insulated from prosecution for additional discrete fraudulent acts committed against the same victim. *State v. Barragan-Sierra*, 219 Ariz. 276, 282, ¶ 17 (App. 2008) (when construing statutory language, "[w]e employ a common sense approach, reading the statute in terms of its stated purpose and the system of related statutes of which it forms a part, while taking care to avoid absurd results").

¶14        Our conclusion is supported by case law construing 18 U.S.C. § 1341, the federal mail fraud statute from which A.R.S. § 13-2310 was adapted. *See Johnson*, 179 Ariz. at 379 ("In *Haas,* we acknowledged the persuasive value of decisions construing the federal mail fraud statute in our construction of § 13–2310(A)."); *State v. Haas*, 138 Ariz. 413, 418 (1983) (noting legislature adapted A.R.S. § 13-2310 from 18 U.S.C. § 1341). Federal courts that have engaged in such a construction have uniformly held that each separate use of the mails in execution of a scheme to defraud constitutes a separate offense of mail fraud. *See, e.g., U.S. v. McClelland*, 868 F.2d 704, 706 (5th Cir. 1989) ("Each separate use of the mails to further a scheme to defraud is a separate offense."); *U.S. v. Joyce*, 499 F.2d 9, 18 (7th Cir. 1974) ("[There] is no doubt that the law may make each putting of a letter into the post office a separate offence.") (quoting *Badders v. U.S.*, 240 U.S. 391, 394 (1916)).

**¶15** Mullet suggests that *State v. Suarez* leads to the conclusion that the legislature intended A.R.S. § 13-2310 to apply to an "aggregate of benefits." There, the defendant accepted a number of fraudulent kickback payments as part of the same scheme to defraud Lake Havasu City. *Suarez*, 137 Ariz. at 371-72. The State elected to charge all of the kickbacks as a single count of fraudulent schemes and artifices. *Id*. at 372. This court rejected the defendant's challenge to the indictment on duplicity grounds, reasoning the evidence established one plan to defraud, not separate plans related to each kickback. *Id*. at 373. The State could elect to charge a single count and prove the scheme through evidence of some, but not all of the events. Here, on the other hand, the State elected to charge each transaction as a single count or unit of prosecution. As the State points out, *Suarez* also stands for the proposition that a prosecutor is permitted to aggregate multiple "obtain[ings]" of "benefits" into a single charge of fraudulent schemes and artifices, which is consistent with Arizona law generally. *See State v. Klokic*, 219 Ariz. 241, 244, ¶ 14 (App. 2008) ("[I]n drafting an indictment, the State may choose to charge as one count separate criminal acts that occurred during the course of a single criminal undertaking even if those acts might otherwise provide a basis for charging multiple criminal violations."). *Suarez* does not require the State to make that charging decision, but rather gives the State the ability to charge each event separately or all events in a single aggerate charge. *Id*. at 374.

**¶16** The evidence establishes that each fraudulent transaction between Mullet and a customer constituted a separate and distinct plan to defraud J.L. and the jury determined it was in fact a separate fraud scheme or artifice.

**¶17** Finally, we reject Mullet's contention that, because there was one victim, there could be only one chargeable fraudulent scheme. As a general matter, charging a defendant with multiple counts of the same crime committed against the same victim is legally permissible if the offenses occurred, as here, on different dates and involved distinct acts with each one causing increased harm. *See supra* ¶¶ 12-13. Mullet provides no authority to the contrary. And Mullet's reliance on *State v. Via*, 146 Ariz. 108 (1985), is misplaced. There, the State charged the defendant with two counts of fraudulent schemes based on the defendant's use of two credit cards stolen from the murder victim and issued by different banks, which the State alleged were the victims of the fraud. *Id.* at 115-16. Appealing from his guilty verdicts, the defendant argued the fraud counts were multiplicitous because his acts constituted only one scheme to defraud banks. *Id.* at 116. In rejecting this argument, our supreme court stated:

Admittedly, the removal of the victim's credit cards constituted only one act. Defendant, however, subsequently embarked upon what could only be construed as two separate courses of conduct, each involving a distinct scheme to defraud a bank using a different credit card. The crime of fraudulent schemes and artifices requires that a defendant act with the specific intent to defraud. *State v. Haas*, 138 Ariz. 413, 418 (1983). Defendant may have had the same general intent in each count—to defraud banks using stolen credit cards. There was, however, a specific and separate victim, as well as a specific and separate credit card, in each count. There was then specific intent to defraud twice, once as to each card and bank. Charging under two counts was not, therefore, multiplicitous.

*Id.*

**¶18**        The supreme court did not rely solely on the fact of two bank victims to conclude that the fraud counts in *Via* were not multiplicitous. Rather, the fact of two victims indicated to the court, along with "two separate courses of conduct" involving two different credit cards, that the defendant acted with "specific intent to defraud twice." *Id*. Thus, *Via* actually supports our conclusion that the fraud counts here are not multiplicitous. As noted, Mullet engaged in a separate course of conduct relating to a specific customer on the exclusive dates alleged in each fraud count.[3]

**¶19**        In sum, we hold that the legislature intended "knowingly obtains any benefit" to be the proper unit of prosecution applicable to the crime of fraudulent schemes and artifices. When a defendant obtains multiple benefits at the expense of a single victim and pursuant to distinct plans, which although perhaps similarly executed are factually independent, an indictment charging each obtained benefit as a separate offense in A.R.S. § 13-2310 is not deficient as multiplicitous. We are mindful

---

[3] Mullet summarily asserts A.R.S. § 13-2310(C), which increases the punishment for those convicted of a fraud involving a benefit of one hundred thousand dollars or more, supports his interpretation of A.R.S. § 13-2310(A). However, by not developing a supporting argument, Mullet waives the issue. *See State v. Lindner*, 227 Ariz. 69, 70 n.1, ¶ 3 (App. 2010) (appellate court will not address arguments that are not developed in a defendant's opening brief).

of the public policy concerns amicus raises regarding the possibility of prosecutorial "overcharging," but those concerns are more properly brought to the legislature's attention.

## II.    Sufficiency of Evidence

**¶20**        Mullet argues insufficient evidence supports his fraud convictions. Mullett contends the State presented no evidence of a misrepresentation or material omission relative to each count and therefore there was insufficient evidence to support his convictions. Mullet argues that he did not misrepresent anything to the customers; they all received what they paid for, namely, the services of a plumber. Alternatively, Mullet contends that, in the incidents underlying 29 of the fraud convictions, the State presented no evidence that Mullet misrepresented any fact to the customers for purposes of obtaining checks made payable to himself.[4] We review claims of insufficient evidence de novo. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).

**¶21**        Sufficient evidence may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (citations omitted). In evaluating the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and "do not reweigh the evidence to decide if we would reach the same conclusions as the trier of fact." *Borquez*, 232 Ariz. at 487, ¶ 9 (citation omitted). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987).

**¶22**        In prosecutions for fraudulent schemes and artifices, the State must prove specific facts showing that a defendant obtained some benefit "by means of" a specific false picture or pretense. *Haas,* 138 Ariz. at 423. "'[F]raudulent pretense' encompasses intentional misleading by hiding or concealing the truth." *Id.* at 422. As our supreme court has noted:

> The "fraudulent aspect of the scheme to 'defraud' is measured
> by a nontechnical standard." *Blachly v. U.S.*, 380 F.2d 665, 671
> (5th Cir. 1967). The statute proscribes conduct lacking in

---

[4] The record reflects that, in these 29 incidents, Mullet merely requested a check made payable to him, and the customers obliged.

"fundamental honesty [and] fair play . . . in the general and business life of members of society." *Id.* In the final analysis, we adopt a broad view of [A.R.S. § 13-2310] because no other view is sensible. The definition of "fraud" must be broad enough to cover all of the varieties made possible by boundless human ingenuity.

*Id.* at 424.

**¶23**        The evidence establishes that Mullet asked customers to make checks payable to him instead of Lawson, thereby implying that the company approved this method of payment. This evidence was sufficient for the jury to determine Mullet misrepresented the propriety of the transactions and later knowingly obtained a benefit each time he deposited a check in his personal account. Although in some of the illicit transactions Mullet expressly misrepresented a fact—such as the credit card machine being inoperable—an explicit false statement is not necessary to support a conviction for fraudulent schemes and artifices. *See State v. Fimbres*, 222 Ariz. 293, 297, ¶¶ 6-7 (App. 2009) (addressing challenge to sufficiency of evidence establishing misrepresentation element in fraud conviction and rejecting argument that defendant's use of his identification card and real name in conjunction with apparently legitimate store gift cards did not mislead store cashiers). Sufficient evidence supports Mullet's fraud convictions.

**III.    Limitation on Mullet's Cross-Examination of J.L.**

**¶24**        Before trial, Mullet verbally requested the court's permission to impeach J.L. with J.L.'s prior felony convictions, stating he did not intend to refer to the nature of the crimes or their underlying facts. The court denied the request because the convictions occurred in 2000, over 10 years before. Before he commenced cross-examining J.L. at trial, Mullet unsuccessfully repeated his request. Mullet argues the court erred in denying his motion to impeach J.L. with J.L.'s prior felony convictions.[5] We disagree.

---

[5] Although additionally framing his argument as one implicating the Confrontation Clause, Mullet did not argue at trial that he had the right under the Confrontation Clause to impeach J.L. with J.L.'s prior convictions. Thus, we would review for fundamental error on this basis. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005); *see State v. Dixon*, 226 Ariz. 545,

¶25        Pursuant to Arizona Rule of Evidence 609(a), a party may attack a witness's character for truthfulness with proof of the witness's prior conviction. However, if the prior conviction occurred over 10 years before trial, evidence of the conviction is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Ariz. R. Evid. 609(b)(1). Prior convictions that occurred over 10 years before trial are admissible under Rule 609(b) "very rarely and only in exceptional circumstances." *State v. Green*, 200 Ariz. 496, 500-01, ¶ 20 (2001). "The trial court has wide discretion in deciding whether to exclude evidence of prior convictions because its prejudicial effect is greater than the probativeness on lack of credibility, and the exercise of this discretion should not be disturbed absent a clear showing of abuse." *Ritchie v. Krasner*, 221 Ariz. 288, 302, ¶ 46 (App. 2009) (citation omitted).

¶26        The record reveals J.L.'s convictions occurred 17 years before trial;[6] thus, Mullet "bore the burden of proving exceptional circumstances." *Green*, 200 Ariz. at 499, ¶ 12. Mullet falls short of meeting his burden. He points to no exceptional circumstance that required the trial court, in the exercise of its discretion, to permit impeachment of J.L. with his prior convictions. Instead, he asserts: "[T]he State relied primarily on one witness, [J.L.], to establish [Mullet's guilt.]" Accordingly, he should be able to use the prior felony to impeach J.L.'s credibility.

¶27        Although J.L. did provide lengthy testimony, substantial other evidence also supports the verdicts. Such evidence included testimony by two former Lawson service technicians (now field supervisors), customers who paid Mullet with checks, copies of the checks themselves and the related invoices Mullet submitted to the customers and the company, copies of Mullet's bank records, and copies of the letter and e-mail Mullet delivered to J.L. admitting his wrongdoing. On this record, the trial court did not abuse its discretion.

---

553, ¶ 34 (2011). However, Mullet does not argue that fundamental error occurred. Accordingly, we do not address Mullet's Confrontation Clause argument. *See State v. Moreno-Medrano*, 218 Ariz. 349, 354, ¶¶ 16-17 (App. 2008) (declining to review for fundamental error when appellant failed to raise claim in trial court and failed on appeal to address whether alleged error was fundamental); *see also State v. Carver*, 160 Ariz. 167, 175 (1989) (holding that the failure to argue a claim usually constitutes abandonment and waiver of such claim) (citations omitted).

        [6] The trial court noted that J.L. received probation for the convictions.

## IV.    Jury Instruction

¶28        Defense counsel made the following comments during his closing argument:

> So a question is, what does it mean to receive a benefit pursuant to a fraud scheme? And the answer is, it means as a result of the fraud scheme. If there's a deception committed and then someone gives you a benefit, that can be a fraud scheme. If someone gives you a benefit and then there is a deception committed, perhaps, to conceal the fact that you've received a benefit, that is not a fraud scheme. It could be something else, it could be a theft, but it can't be a fraud scheme. If the purpose of the deception is not to get the benefit, but is, instead, to cover up the fact that you got the benefit, not a fraud scheme.
>
> . . .
>
> [I]f there's no evidence that those deceptions were made prior to the receipt of the benefit, which is, again, I'm Mr. Mullet and I'm receiving a check and once that check is in his hand, the benefit has been received. Anything that happens after that is for the purpose of concealment, not an element of the fraud scheme.

¶29        In its rebuttal argument, the State responded:

> No the State didn't come up with some theory of fraud. The theory of fraud for the State, it is an attorney argument based on the instructions that you have and it's right here in black and white, *that fraud is intending to mislead another person for the purpose of gaining some benefit, and that's what happened here. Mr. Mullet misle[]d, misrepresented, omitted telling customers information that resulted in them writing a check payable to him which he deposited into his account.* This is . . . simple. This is [a] straightforward case. This is not a concealment case. There isn't even the word concealment in the jury instructions, so look at the law, use your common sense, which is right in the jury instructions, and think about what makes sense in this case.
>
> . . .

This is not a concealment case. This is a fraud case. And it's completely different, because Mr. Mullet had a plan and he went after customer after customer after customer, and that's in the instructions. The legal definitions, that is the law in Arizona. It's not a theory that the State just came up with. *An intent to defraud is an intent to mislead another person, all the customers, for the purpose of gaining a benefit, all the checks, for the purpose of inducing another person to give them property*, and the definition of property came up because property is in the definition. There isn't the word concealment. Don't be distracted, be smart about your deliberations, think about the evidence you heard and use your common sense.

(Emphasis added.)

**¶30** Based on the State's rebuttal argument, Mullet requested a supplemental jury instruction based on the rule enunciated in *State v. Johnson*; namely, concealment of theft is not alone sufficient to uphold a fraud conviction because obtaining a benefit "by means of" a specific false picture or pretense must exist.[7] *Johnson*, 179 Ariz. at 379. The trial court denied the requested instruction.

**¶31** Mullet argues the supplemental instruction was necessary to remedy the State's "improper legal assertion . . . that evidence of concealment constitutes sufficient evidence of fraud to sustain a conviction." We review the decision to give a jury instruction for abuse of discretion. *State v. Bolton,* 182 Ariz. 290, 309 (1995).

**¶32** Although the instruction may reflect a correct statement of law, the italicized comments in the State's rebuttal argument reflect that the State, contrary to Mullet's argument, did not seek a conviction merely based on Mullet's manipulation of the invoices. The State reminded the jury repeatedly that the crime of fraudulent schemes requires either an affirmative misrepresentation or material omission. While Mullett argued that there was only after-the-fact concealment, the jury was free to accept or reject that argument. The State did not argue that concealment of the misrepresentation would constitute an offense. The court did not abuse its discretion in declining to give Mullet's requested instruction.

---

[7] The precise wording of the instruction is not clear from the record.

## V.     Prosecutorial Misconduct

¶33     After defense counsel inferred during closing argument that Mullet cashed the customers' checks and delivered the proceeds to J.L., the following exchange took place during the State's rebuttal argument:

> [Prosecutor:] If you wanted to do this . . . you could look through every single page of the bank records for [Mullet's accounts], because I've actually done that, and [the second trial prosecutor] did that the very first time that we heard this questioning, and you can tabulate it yourself, these exhibits are admitted, and you can literally go through there and pick out--
>
> [Defense counsel]: Facts not in evidence.
>
> THE COURT: The lawyers' comments in jury argument is not evidence. Jurors can rely on their notes and memories of the evidence.
>
> [Defense counsel]: And vouching, as well.
>
> THE COURT: [Prosecutor].
>
> [Prosecutor]: You can go through the bank records and call out the cash withdrawals. They do not parallel any of the checks and they certainly do not come up to the amount -- the full amount of the theft, assuming this ludicrous theory was even true. So you could actually go and independently vet yourself, if you felt you wanted to do that. It's not there.

¶34     Mullet argues the trial court's failure to admonish the prosecutor and instruct the jurors that her "vouching was an improper argument" amounted to reversible error. Mullet contends the prosecutor vouched for the evidence "by informing the jury that both prosecutors . . . had reviewed the evidence and concluded that the crimes occurred."[8]

¶35     To determine whether the prosecutor's argument was improper, we consider whether she called the jury's attention to matters it should not consider. *State v. Roque*, 213 Ariz. 193, 224, ¶ 128 (2006), *abrogated*

---

[8] Mullet also asserts vouching occurred "in the form of putting the prestige of the Arizona Attorney General's Office behind the integrity of the investigation and charges."

*on other grounds by State v. Escalante-Orozco*, 241 Ariz. 254, 267, ¶¶ 13-14 (2017). Improper prosecutorial vouching consists of two types: "(1) where the prosecutor places the prestige of the government behind its witness; (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Vincent,* 159 Ariz. 418, 423 (1989). The first type of vouching consists of personal assurances of a witness's truthfulness; the second type "involves prosecutorial remarks that bolster a witness's credibility by reference to material outside the record." *State v. King,* 180 Ariz. 268, 277 (1994) (citations omitted).

**¶36** The State did neither. Reasonably viewed, the prosecutor's comment simply referred to items admitted into evidence and argued how they should be analyzed during deliberation to determine that Mullet committed the charged offenses. Additionally, the prosecutor referred to the State's presentation of the records to the jury at trial. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974) ("[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."). The records were admitted into evidence, and thus the jury could properly consider them. The court did not reversibly err.

## CONCLUSION

**¶37** Mullet's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA